UNITED STATES *v.* STRAUSS & Co. (No. 2514)[1]

1. ERROR MUST BE ASSIGNED.

A ruling of the Board of United States General Appraisers not assigned as error is not before this court on appeal.

2. TOYS—PARTY FAVORS.

The fact that toys may be sometimes played with by adults does not make them anything but toys, and they are so classifiable under paragraph 1414, Tariff Act of 1922. This principle is applied to a great number of articles in evidence and described in the opinion, which, though essentially toys, are used by adults on festal occasions.

3. CONSTRUCTION, PARAGRAPH 1414, TARIFF ACT OF 1922—LEGISLATIVE SANCTION.

The new provisions in paragraph 1414, Tariff Act of 1922, were not intended to modify the definition of toys in *Illfelder* v *United States*, 1 Ct. Cust. Appls. 109, made under paragraph 418 of the act of 1897, legislative approval of which is presumed by reenactment in substantially the same language in successive tariff acts since. Their only purpose is to include in the paragraph, eo nomine, certain articles which had been judicially excluded from it.

4. LOTTOES NOT TOYS.

Sets of cards and numbered wooden disks, used by children and adults to play a game called lottoes, are not toys.

[1] T. D. 41025.

5. TABLE CROQUET SETS ARE NOT TOYS.

Under the rule of *United States* v. *Field & Co.*, 12 Ct. Cust. Appls. 543, T. D. 40738, a small croquet set, designed for use on a table, is not a toy.

United States Court of Customs Appeals, June 23, 1925

APPEAL from Board of United States General Appraisers, G. A. 8895 (T. D. 40504)

*William W. Hoppin,* Assistant Attorney General -(*Fred J. Carter,* special attorney, of counsel), for the United States.
*Walden & Webster* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument May 18, 1925, by Mr. Carter and Mr. Jordan]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The collector classified the merchandise involved herein as toys, and assessed same for duty at 70 per centum ad valorem under paragraph 1414 of the Tariff Act of 1922, which reads as follows:

Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas-tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

At the trial before the Board of General Appraisers, 52 samples represented by Exhibits from 1 to 52, inclusive, were introduced in evidence, all of which are before us. Protests as to Exhibits 22, 23, 24, 25, 27, and 33 were overruled, which rulings of the board are not appealed from. The Government concedes that 12, 13, 14, and 18 are not dutiable as assessed, but are dutiable under paragraph 211, as found by the board. The Government in its brief furthermore concedes that Exhibits 26, 40, 42, and 44 are not toys, and that their classification was properly indicated by the board.

This leaves for our consideration the merchandise represented by the following exhibits:

1. 6″ paper kazoo or mirliton. 2. 18″ paper horn with wooden mouthpiece. 3. Blowout. 4. Horn with paper pompon on end. 5. Paper kazoo or mirliton. 6. Paper horn with pompon on end. 7. Paper horn in shape of cigarette. 8. Wooden kraket or ratchen. 9. Surprise box having jumping mouse. 10. Imitation kodak having jumping mouse in box. 11. Imitation kodak having jumping mouse in box. 15. Earthenware doll or puppen. 16. Earthenware doll or puppen. 17. Earthenware doll or puppen. 19. Colored gelatin glasses invoiced as toy eyeglasses. 20. Lottoes. 21. Lottoes. 28. 6″ paper horn with wooden mouthpiece. 29. Green gelatin glasses. 30. Papier-mâché face with feather in hat. 31. Clay mouse on a pin. 32. Horn with paper rooster on end. 34. Paper cat standing on wooden base. 35. Slipper cricket. 36. Frog cricket. 37. Lottoes. 39. Table croquet. 41. Black cat or crab with wooden legs and cotton

tail. 43. Head of black cat on a pin. 45. Metal horn. 46. Three-note horn. 47. Six-note horn. 48. Eight-note horn or trumpet. 49. Six-note horn or trumpet. 50. Four-note horn. 51. Paper parasol. 52. Ma-ma squeaker.

These 37 different articles may be divided into several classes:

Class 1 (Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 28, 32, 35, 36, 45, 46, 47, 48, 49, 50, and 52) are noise makers. The evidence shows that they are used by children at play, and are also used frequently by adults to make a noise on New Year's Eve, on Hallowe'en nights, on election nights, and also in cafés for the same purpose. There was testimony that the slipper and frog crickets (Exhibits 35 and 36) were also used as signals to start elevators.

Class 2 (Exhibits 9, 10, 11, 15, 16, 17, 30, 31, 34, 41, 43, and 51) are used by children at play, and are also often used by adults at banquets and cafés, and, on festal occasions, as favors in surprise packages, or as special novelty decorations.

Class 3 (Exhibit 19) consists of colored gelatin glasses, invoiced as toy eyeglasses. Exhibit 28 is green gelatin eyeglasses. The proof shows that they are used by children as playthings, and also by adults, at times, on the seashore to protect the eyes from the sun. They are composed of small circular or oval disks of gelatin connected by a piece of tin to fit the shape of a small nose.

Class 4 (Exhibits 20, 21, and 37) are lottoes, and consist of paper cards and numbers on wooden disks, with which a game is played by both adults and children. The rules accompanying the lottoes indicate that they may be used for gambling purposes.

Class 5 (Exhibit 39) consists of six mallets and six balls, together with wickets and other pertinent paraphernalia for playing croquet. The balls are about 1½ inches in diameter and the mallets are approximately 1 foot long. It is a complete miniature croquet set, and the proof shows that it is used by children chiefly, that adults also use it at times, and that it is played with upon a table.

As to all of these exhibits, the Government attempted to prove that they were commercially known as toys, regardless of how they were commonly known, and regardless of the courts' definition of toys. Six witnesses testified for the Government and seven for the importer. The importer's witnesses were mostly interested witnesses, and, in some other respects, their testimony was not entitled to great credit as to certain articles. The board, however, had the advantage of the presence of the witnesses. It held that the Government had not made out a case of commercial designation. We will not disturb its finding.

The Government also introduced evidence as to long continued administrative practice. The board permitted the testimony to go into the record, reserving the right for the full membership of the board to rule upon importer's objection later. In its opinion, the

board ruled that it was not proper to receive proof of administrative practice in determining the meaning of the word "toys," relying upon *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109. The Government argues this question at length in its brief. The importer has pointed out that the ruling of the board on the exclusion of this evidence was not assigned as error, and that the question, therefore, is not before us. We agree with the importer's contention. It remains for us to determine whether any or all of the 37 exhibits before us were properly classified by the collector as toys, and, in so doing, we are to confine ourselves to the common meaning of the term.

In the Illfelder case, supra, this court being required to review the classification of certain sparklers consisting of strips of metal, to which were attached iron filings and certain explosives and illuminating materials, and which might be used by children, and also by adults, for fireworks, held same not dutiable as toys at 35 per centum ad valorem, under paragraph 418 of the tariff act of 1897, as was contended for by the importer, and that they were manufactures of metal. In this case the court defined toys as follows:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

The Illfelder case, supra, has been followed by this court in a great number of cases and among them are, *Woolworth Co.* v. *United States*, 11 Ct. Cust. Appls. 217; *United States* v. *Andrews*, 12 Ct. Cust. Appls. 258, T. D. 40268; *United States* v. *Globe Overseas Corp.*, 13 Ct. Cust. Appls. 10, T. D. 40849, and that it is controlling in the case at bar is admitted by both sides.

The provisions of paragraph 418 of the act of 1897 have been reenacted in substantially the same language into the act of 1909 (paragraph 431), into the act of 1913 (paragraph 342), and into the act of 1922 (paragraph 1414). The construction given by this court to the toy paragraph in the act of 1897, therefore, has received congressional approval on more than one occasion.

The new provisions in paragraph 1414 of the act of 1922 are not involved in the consideration at hand, and, as far as the merchandise in controversy is concerned, when Congress used the words "Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books * * * and all other toys, and parts of toys, not composed * * * and not

specially provided for, 70 per centum ad valorem," in paragraph 1414, it had the same merchandise in mind that it had in mind when it enacted paragraph 418 of the act of 1897. In the whole paragraph it intended to include, and did include, certain articles which it specifically named for the first time, most of which, if not all of which, had been, by the ruling of the Board of General Appraisers or this court, denied classification under the paragraph.

It is argued by the importer, and apparently accepted by the Board of General Appraisers, first, that the phrase, "*something which by its very nature and character is reasonably fitted for no other purpose*," used in the Illfelder case, supra, in defining toys should be strictly construed so as to compel the classification under paragraphs other than 1414 of all articles used for any purpose by adults; second, that, by inserting additional articles eo nomine in paragraph 1414, Congress did not intend to further broaden the meaning of the paragraph than to require the additional articles named to be included within it; third, that all the merchandise represented by exhibits in classes 1, 2, and 3, as set out above, being used by adults in the manner indicated, was such a use by adults as to exclude it from the toy paragraph when the definition in the Illfelder case was applied.

We do not agree with the first and third contentions, and, as to the second contention, we do not think the additional language narrows the scope of the paragraph; but, since it left in it the words "and all other toys," we think it is obvious that it meant to make more goods dutiable as toys under the paragraph than had been held by the courts to be classifiable thereunder.

The court, in the Illfelder case, no doubt desiring to draw special attention to the fact that it had used the word "reasonably" with a special or emphasized meaning, put the word in italics. If the phrase "which by its very nature and character is *reasonably* fitted for no other purpose" was not a part of the first sentence quoted, there would be more weight to the contention of the importer that it means what it contends it does. We think, when the court used this phrase, that it did not have in mind the exclusion from the paragraph of merchandise having all the essential characteristics and uses of a toy, but which was occasionally or fugitively used by adults. The contention of the importer, if carried to its ultimate conclusion, would lead to the anomalous result of toy trains, toy horses, and toy pianos being denied toy classification if it could be shown that an adult, at any time, in any state of mind, found amusement by playing with them.

The articles represented by classes 1, 2, and 3, we think, are intended and designed for the amusement of children only and are "*reasonably* fitted for no other purpose" within the meaning of the

Illfelder case, and that the use of this class of merchandise by grown-ups at cafés, at banquets, New Year's Eve parties, etc., is not only an exceptional and fugitive use, but is a childish use—that is, grown-ups are playing with them as children would play. If grown-ups play with toys as children play, we know of no good reason why the articles they play with should not bear the higher rate of 70 per centum ad valorem rather than the lower rates for component materials of chief value.

The evidence furthermore shows that most of the articles in the first three classes—and we see no reason why it would not apply to all of them—after being used by adults in the manner indicated, were taken home to the children.

An examination of Exhibits 19 and 28, gelatin eyeglasses, is convincing of their toy character, and the testimony that adults have been seen wearing them on the seashore is not convincing that they are worn for a practical purpose or that they are reasonably fitted for the amusement of adults. The evidence of the sample as to their toy characteristics outweighs any other evidence before us. There is nothing in the case which would show that they are used by children for any practical purpose other than their amusement.

As to Exhibits 20, 21, and 37, lottoes, the testimony and the evidence of the sample sustain the finding of the board that they are not toys.

Under *United States* v. *Field & Co.*, 12 Ct. Cust. Appls. 543, T. D. 40738, it seems clear that Exhibit 39, which consists of a table croquet set heretofore described, is not a toy, but it is a small, complete croquet set, used not as a plaything, necessarily, any more than a boy's baseball is a plaything, but is the complete outfit for a game played under definite rules and regulations, either by children or adults. This article is no more a toy than is a small bicycle used by a small boy for practical purposes.

The judgment of the Board of General Appraisers is affirmed as to Exhibits 20, 21, 37, and 39, and as to all other exhibits reversed.
*Modified.*