UNITED STATES *v.* ABERCROMBIE & FITCH Co. (No. 3709)[1]

United States Court of Customs and Patent Appeals, May 21, 1934

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham, Jr.,* special attorney, of counsel), for the United States.
*Siegel, Mandell & Stein* (*Samuel T. Siegel* of counsel) for appellee.

[Oral argument December 11, 1933, by Mr. Lawrence and Mr. Siegel]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain table-croquet sets dutiable at 30 per centum ad valorem under paragraph 1502 of the Tariff Act of 1930, as claimed by the importer, rather than as "toy games" at 70 per centum ad valorem under paragraph 1513 of that act, as claimed by the Government and as assessed by the collector at the port of New York.

The competing paragraphs, so far as pertinent, read:

PAR. 1502. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, * * * primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), and all clubs, rackets, bats, golf tees, and other equipment, such as is ordinarily used in conjunction therewith, all the foregoing, not specially provided for, 30 per centum ad valorem * * *.

PAR. 1513. * * * toy games * * *. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

On the trial in the court below, appellee called two witnesses, Mr. James O. Montgomery, "assistant importing manager" of the Abercrombie & Fitch Co., appellee, and Varian Potter Browning.

[1] T. D. 47109.

The witness Montgomery identified a sample of the merchandise, which was introduced in evidence as Exhibit 1. He gave no other testimony.

Exhibit 1 is a table-croquet set, enclosed in a wooden box. It consists of six wooden mallets, six wooden balls, ten metal hoops or arches, enameled, with wood bases, a broad, thin, flat strip or band, apparently composed of cloth, designed to be placed around the table to prevent the balls rolling off, and other paraphernalia necessary for the playing of the game. The mallets have handles about 11 inches long, and heads about one-half inch in diameter and 2½ inches in length. The hoops or arches are about 3 inches in height and 3 inches in width. The balls are about 1½ inches in diameter. Each of the articles comprising the set is well and substantially made.

Appellee's witness Browning stated that he was "buyer and manager of the golf and athletic department" of Abercrombie & Fitch, appellee; that the involved articles were sold in the golf and athletic department of his company; that they are used in the playing of table croquet; that the game is played exactly the same as the ordinary outdoor game of croquet, and in accordance with the same rules; that it is usually played on a ping-pong or other large table; that he had seen the game played by adults ranging from 35 to 50 years of age in a clubroom on Fifth Avenue in New York City, on steamships, and in his home; that the game could be played according to either the American or the English rules; that the English rules called for six hoops or arches and the American rules called for ten. He further stated that he had never seen the game played by children.

The Government called three witnesses, R. M. Brown, Marian E. Stringer, and Charles F. Schondelmeier.

The witness Brown testified that he was a manufacturer and salesman of wooden toys and novelties, and was connected with the Newton & Thompson Manufacturing Corp., of Branton, Vt.; that his company manufactured table-croquet sets, ranging in price from 10 cents to $1 per set retail; that some of them were put up in paper boxes, and some in wooden boxes; that the individual articles comprising the sets manufactured by his company were not of the same size as those here involved, some being slightly larger and some slightly smaller; that they were sold by his company chiefly to the 10- and 20-cent syndicate stores, where they are sold in the toy departments; and that their higher price sets were sold to department stores. He further stated that he had seen table-croquet sets manufactured by his company used by small children, of an average age of approximately 7 years, in three different homes. One was in Montreal, Canada, with which we are not concerned. One was in Branton and the other in Rutland, Vt.

The witness Marian E. Stringer testified that she was assistant salesmanager of the Selchow & Righter Co., of New York City, at the present time engaged in the manufacture of games; that previously her company was engaged in the wholesale toy business, at which time she was assistant buyer for the company; that she had sold table-croquet sets similar to those here involved to toy departments and toy stores throughout the country; that she had seen such sets in use from 10 to 20 times in homes in New York City and in Pennsylvania; that they were being used by children from about 6 to 12 years of age; and that, although adults could play the game of table croquet as well as children, she had never seen any of them play it.

The witness Charles F. Schondelmeier testified that he was sales agent of Voetsch & Silberman of New York City, which concern was engaged in the business of selling toys; that he had seen table-croquet sets similar to those here involved in use from about 50 to 70 times over a period of 8 to 10 years; that he had seen them used in homes by his "own children, children's children, * * * neighbors' children, and relatives' children"; that he had also seen the game played in other homes by children from 8 to 12 years of age. When asked if he had ever seen any adults playing the game of table croquet, he said: "We come in once in a while and play with the kiddies, certainly." He stated that of the total number of people he had seen using such sets, 70 or 80 per centum were children. On cross-examination he was asked when he had seen such sets in use and he said: "My home in Brooklyn; afterwards in Floral Park, Queens." He further stated that table-croquet sets were manufactured and sold in different qualities and sizes—some expensive and some inexpensive; that the size did not make any difference so far as the playing of the game was concerned; and that the game could be played either by adults or by children.

On this record the court below, in an opinion by Sullivan, Judge, stated that the testimony was somewhat contradictory on the question of whether the merchandise was chiefly used for the amusement of children. With reference to the sample of imported merchandise, Exhibit 1, the court said:

We have, however, examined the sample, exhibit 1, very carefully, and have read the instructions accompanying it. From our own common knowledge of similar table-croquet games we are convinced that adults would derive considerable pleasure and amusement from playing this game. Certainly, very small children could not play it, if it was placed on a table of average height as their reach would not be sufficient to enable them to do so, unless they stood on a bench or chair, which would be rather impracticable in playing this game.

The court then cited and quoted from the decisions of this court in the cases of *United States* v. *Strauss & Co.*, 13 Ct. Cust. Appls. 167–172, T.D. 41025, and *Marshall Field & Co.* v. *United States*, 20 C.C.P.A.

(Customs) 225, T.D. 46037, as well as other authorities on the subject, and held that—

From the above authorities, the facts in this case, and a careful examination of exhibit 1 we are of opinion that this merchandise should not have been classified by the collector as a toy, and that it is properly dutiable at 30 percent ad valorem under the heretofore quoted provision of paragraph 1502. We so hold.

In the case of *United States* v. *Strauss & Co., supra*, this court considered table croquet sets, among other things and, with reference thereto, said:

Under *United States* v. *Field & Co.*, 12 Ct. Cust. Appls. 543, T.D. 40738, it seems clear that Exhibit 39, which consists of a table croquet set heretofore described, is not a toy, but it is a small, complete croquet set, used not as a plaything, necessarily, any more than a boy's baseball is a plaything but is the complete outfit for a game played under definite rules and regulations, either by children or adults. This article is no more a toy than is a small bicycle used by a small boy for practical purposes.

In the case of *Marshall Field & Co.* v. *United States, supra*, we held that, from their appearance and from the testimony in the case, table-tennis sets were not chiefly used for the amusement of children, and were, therefore, not dutiable as toy games under paragraph 1513 of the Tariff Act of 1930, but were properly dutiable at 30 per centum ad valorem under paragraph 1502 of that act.

Counsel for the Government contends that appellee failed to establish on the trial below that the involved merchandise was not chiefly used for the amusement of children, and, therefore, failed to overcome the presumption of correctness attending the collector's classification. Other claims were made by counsel for the Government, but we deem it unnecessary to discuss them here.

We have examined the exhibit and the testimony in the case with care. The articles comprising the involved croquet sets are well and substantially made. Appellee's witness testified that he had seen such sets used by adults in clubrooms, on board ship, and in private homes, and that he had never seen them used by children.

The court below accepted that evidence as sufficient to make a *prima facie* case, and we are unable to hold that it erred in that respect.

It is obvious from the testimony of the witness Schondelmeier, who testified for the Government, that the articles comprising the involved table-croquet sets are of the usual and proper size for the playing of the game of table croquet, and that the game may be, and is, played by both adults and children. It is true that he stated that, although he had seen sets similar to those here involved used by adults, he had seen them used chiefly by children. It would seem, however, from his testimony, particularly that given on cross-examination, that his information on the subject was somewhat limited, probably to the use of such sets in his own home.

The witness Brown, who also testified for the Government, had seen table-croquet sets used in but two homes in the United States, at which times they were being used by children.

The witness Marian E. Stringer testified that she had seen table-croquet sets used in several homes by children, and that she had never seen the game played by adults.

The observations of the witnesses for the parties, so far as the question of whether the involved articles were chiefly used for the amusement of children is concerned, were not very extensive, and, for that reason, the testimony of record is not very satisfactory. On the record as made, however, we are unable to hold that the court below reached the wrong conclusion. Its judgment is, therefore, *affirmed*.