**No. 58429.**—E. B. Miller Associates, Inc., and J. M. Rodgers Co. *v.* United States, protests 205274–K, etc. (New York).

Oliver, Chief Judge: This case relates to miniature railroad locomotives and parts therefor, and miniature railroad coaches, all of which were assessed with duty at the rate of 50 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, as toys, and parts thereof, not specially provided for. Plaintiffs claim that the articles are properly dutiable either at 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by T. D. 52739, as articles having as an essential feature an electrical element or device, and parts thereof, not specially provided for, or at 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, as articles, composed wholly or in chief value of base metal, not specially provided for.

Plaintiffs introduced the testimony of one witness, who stated that he is the representative of manufacturers of model airplane kits, woodworking sets, and model trains, that are "sold to the hobby trade, hobby jobbers and hobby dealers throughout the country." His familiarity with the present merchandise developed through contact in this country with an English manufacturer of "HO scale model trains, which are scale of the actual prototypes in England," and, as a result of that association, the witness imported the merchandise under consideration.

His identification of the merchandise in question is substantially as follows: A locomotive with coal tender (plaintiffs' collective exhibit 101), connected by means of a driveshaft on the tender, is representative of the invoice items described, generally, as king class scale model locomotives, complete with electric motor. The article is made to run on "HO scale track," and is operated by an electric motor "contained in the tender," and that makes contact with the current "through the two rails of the track by pick-up points underneath the tender." The witness described "HO track" as track that is scaled to 3½ millimeters to the foot and which conforms to gauge specifications of the National Model Railroad Association, as to "the specifications on the height of the rail, the width of the rail head, and the general profile outline of the rail that is used in this track." Electric current passes in the track through "two brass rails which are mounted to the fiber strips," that act as an insulation between the rails.

A locomotive (plaintiffs' exhibit 102), described on the invoices as scale model prairie tank locomotive, complete with electric motor, is equipped with an electric motor, runs on "HO scale track," and picks up the electric current "by means of two pick-ups underneath the locomotive."

Another locomotive with tender (plaintiffs' collective exhibit 103), described on the invoices as "Streamline S. R. Scale Model Locos complete with Elec. Motor," operates by electrical current that is picked up "from the two rails of the track by pick-ups on the tender, underneath the tender," and is made to "HO scale."

The invoice description, "Scale Model Elec. Insulated Wagon Lit Coaches," was identified as a miniature coach (plaintiffs' exhibit 104), that has "nothing electrical except that the wheels are insulated so as not to short-circuit the track," and when used can be pulled by any of the locomotives (plaintiffs' collective exhibits 101 and 103, and exhibit 102).

The invoice item, "Scale Model Elec. Insulated Pullman Coaches," was described as "an English type of coach," substantially the same as the article represented by plaintiffs' exhibit 104.

The invoice item, described as "Tenders for Elec. Scale Model Locos (on base only)," was identified as a "replacement part" for either of the tenders attached to the locomotives (plaintiffs' collective exhibits 101 and 103).

The invoices before us also include several items of repair or replacement parts for the articles, hereinabove referred to, said plaintiffs' collective exhibits 101 and 103 and exhibits 102 and 104. In addition thereto, there are items covering electric switches which are "sample parts" made "for the operation of these units in England."

The witness also referred to an invoice item described as "Brick paper," but as that merchandise was assessed with duty as a manufacture of paper, not specially provided for, it is not a proper matter for consideration under plaintiffs' case, which has been limited to the merchandise assessed as toys, and parts thereof.

It is agreed between the parties that "Exhibits 101 through 104 are composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer." (R. 16.) An examination of the said exhibits shows that all of the articles have been painted in appropriate color or colors and that each bears a name, symbol, or printed matter, identifying the article as a model of particular railroad equipment. The witness explained that the articles are imported in a finished condition because they are prototypes of locomotives or coaches, with identical markings, used on English railroads.

Counsel for the respective parties stipulated, during the course of the trial, that:

* * * the merchandise at bar, Plaintiff's Exhibits 101 through 104, are similar in all·material respects to Plaintiff's Exhibit 1 in protest 157820–K, which was decided in International Models, Inc., Victory Shipping Co., Inc. v. United States, C. D. 1541, except that Exhibits 101 through 104 are imported completely finished and painted, whereas Plaintiff's Exhibit 1 in C. D. 1541 was imported in an unfinished, unpainted condition.

and that in their imported condition, "Exhibits 101 through 104 are ready to be run on the tracks."

On motion of counsel for plaintiffs, and without objection from Government counsel, "the testimony in protest 157820–K, decided in C. D. 1541" was received in evidence. (R. 17.)

The incorporated case, *International Models, Inc.,* and *Victory Shipping Co., Inc.* v. *United States,* 31 Cust. Ct. 24, C. D. 1541, involved an issue identical with that now before us. There, the merchandise consisted of a miniature locomotive (approximately 3¼ inches in length), which was identified as an "0–4–0 switcher"

and described as a model of the type that "is used in switch yards for changing freight around or even on sleepers, taking them around from track to track." The article was manufactured, "as nearly as mechanically possible," according to scale under specifications issued by the National Model Railroad Association, and was made to run by an electric motor. Plaintiffs' testimony was to the effect that the so-called "switcher" was chiefly used by adults who were engaged in model railroad building as a hobby, and that, in addition to such principal use, the merchandise was also used for advertising purposes and by moving picture and television studios for theatrical effects. There was also before us, in the incorporated case, much testimony, introduced by defendant, concerning types of miniature locomotives of "HO" gauge, that we found were designed and chiefly used for the amusement of children. The legal phase of our decision in said C. D. 1541 invoked the well-established principle that where "chief use" is the "determining factor in classifying merchandise, it is the chief use of the class or type of merchandise to which the importation belongs that is controlling." The record in the incorporated case established, as stated in our decision, C. D. 1541, supra, "that the articles in question are not within the class of miniature locomotives that are toys, but that they are distinguishable therefrom both in type of construction and manner of use." The said articles were held not to be toys, as assessed.

The agreement between the parties herein is that the present merchandise (plaintiffs' collective exhibits 101 and 103, and plaintiffs' exhibits 102 and 104) is "similar in *all material* respects ' [italics added] to the merchandise involved in the *International Models, Inc., et al.* case, *supra*, and that the testimony taken in the cited case shall be received in evidence in this case. The factual situation that prevailed in the incorporated record applies in this case, and, coupled with plaintiffs' uncontradicted evidence here, is sufficient to support the conclusion that the articles in question, as represented by the exhibits, hereinabove identified, are not properly classifiable as toys, as assessed. That the locomotives and coaches in question are "imported completely finished and painted," and that the merchandise involved in the incorporated case was "in an unfinished, unpainted condition," as agreed by the parties, is not controlling in the present case  The material fact is the showing of chief use, which, as we found in the incorporated case, and which we adhere to in the present case, is by adults, in the construction of model railroad layouts.

The cases of *United States* v. *Strauss & Co.*, 13 Ct. Cust. Appls. 167, T. D. 41025, and *United States* v. *Wanamaker*, 15 Ct. Cust. Appls. 310, T. D. 42485, cited in the briefs of counsel for defendant and *amicus curiae*, cannot be applied herein. Both of said cases arose under the Tariff Act of 1922, which, unlike the Tariff Act of 1930 that controls the present issue, did not include a statutory definition of the term "toy." The reasoning employed in those cases cannot be invoked herein. The statutory definition of a "toy," as set forth in paragraph 1513 of the Tariff Act of 1930, is as follows:

* * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development.

It will be observed that the criterion for classification of merchandise as a toy, is that the article shall be "chiefly used for the amusement of children," a condition which does not apply to the articles before us.

It is conclusively established by the present record that the locomotives under consideration (plaintiffs' collective exhibits 101 and 103, and exhibit 102) have "as an essential feature an electrical element or device." They are, therefore, classifiable (as was the merchandise involved in the incorporated case) under paragraph 353, as modified, *supra*.

The factual situation with respect to the coaches (plaintiffs' exhibit 104) is materially different from that concerning the locomotives. Plaintiffs' testimony establishes that the coaches are models of certain railroad cars; that they are not included within any particular set, but are separate entities which may be attached to any locomotive or combination of cars making up a model railroad train; and that they do not have "as an essential feature an electrical element or device." Since it is conceded that the miniature coaches are composed wholly or in chief value of base metal, not plated with platinum, gold, or silver, or colored with gold lacquer, these items are properly classifiable under the provision for manufactures of metal, not specially provided for, in paragraph 397, as amended, *supra*.

For all of the reasons hereinabove set forth, we hold the miniature locomotives, and parts therefor, to be dutiable at the rate of 13¾ per centum ad valorem under paragraph 353, as modified, *supra*, and the miniature coaches to be dutiable at the rate of 22½ per centum ad valorem under paragraph 397, as modified, *supra*, as claimed by plaintiffs.

To the extent indicated, the protests are sustained. In all other respects and as to all other merchandise, the protests are overruled, except protest 211066–K, which, having been abandoned as to entry 779497, is dismissed so far as it relates to the same entry. Judgment will be rendered accordingly.