INTERNATIONAL NAVIGATION
CO., Inc.,

v.

UNITED STATES.

C.D. 1836; Protest No. 206465–K.

United States Customs Court,
Third Division.
Jan. 3, 1957.

Joseph Cardillo, Jr., New York City (Curran C. Tiffany, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (William J. Vitale, trial atty., New York City), for defendant.

Before JOHNSON and MOLLISON, Judges.

JOHNSON, Judge.

This is a protest against the collector's assessment of an ad valorem duty of 50 per centum under section 466 of the Tariff Act of 1930, 19 U.S.C.A. §§ 257, 258, on the cost of certain repairs made in foreign countries to a vessel documented under the laws of the United States to engage in the foreign or coasting trade and against the decision of the collector or his assistant and that of the Chief of the Division of Classification, Entry, and Value denying an application for relief from such duties. It is claimed in the first five items of the protest that said repairs were compelled by a casualty arising in the regular course of the vessel's voyage and were necessary to secure the safety of the vessel; that where the action of customs officials depends upon the validity of the action of the Secretary of the Treasury, the validity of such action is reviewable; that the action of customs officials in denying an application for remission of duties herein was void, on the ground that the Secretary's authority to delegate his duties was limited to the exportation of merchandise; that there was an abuse of discretion in denying remission herein; and that the decision denying remission was appealable on the ground that the Secretary's authority to remit was in part ministerial. The last three items of the protest cover claims that certain items were not properly dutiable as repairs under said section 466.

The pertinent provisions of the tariff act are as follows:

"Sec. 466. Equipment and Repairs of Vessels.

"Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"Sec. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

"Sec. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination;
* * *

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, * * *."

At the opening of the trial, counsel for the Government moved to dismiss the first five items of the protest on the ground that the court lacked jurisdiction over the subject matter, citing Waterman Steamship Corp. v. United States, 30 C.C.P.A., Customs, 119, C.A.D. 223. Decision on the motion was reserved.

In the Waterman case, it appeared that a certain vessel developed engine trouble on a voyage to Japan and repairs were made in that country. On its return here, application was made to the Commissioner of Customs for remission of duty on the cost of such repairs. The application was denied on the ground that there was no showing that the repairs were occasioned by stress of weather or other casualty. After liquidation, in which duty was assessed on the cost of the repairs, protest was filed for remission of such duty. The protest was dismissed on the ground that, under section 466 of the Tariff Act of 1930, the court was without jurisdiction to review the action of the Secretary in refusing to remit or refund duties on repairs to a vessel made in a foreign country. In the course of its opinion, the court pointed out that it was not the intention of Congress to confer upon collectors, or upon the courts, the power to review issues, the final determination of which was conferred exclusively upon the Secretary of the Treasury, but that where official action of customs officials depended upon the validity of the action of the Secretary, the validity of such action might be judicially reviewed. The court then stated, 30 C.C.P.A., Customs, at pages 125–126:

"It is clear from the provisions of sections 3114 and 3115, *supra*, that it was the mandatory duty of the collector to assess the duty herein complained of, and that he had

no authority to either remit or refund such duty, such authority being conferred upon the Secretary of the Treasury by the provisions of section 3115. There being no provision either in section 3115, or in any other provision of the Tariff Act of 1930, for a review of the Secretary's decision, we think it is clear that it was the purpose of the Congress, by the enactment of section 3115, to confer upon the Secretary of the Treasury exclusive and final authority to determine, from the evidence submitted, whether or not the duties provided for in section 3114 should be remitted or refunded."

Because the issues had not been raised below, the court did not pass upon contentions that the Secretary of the Treasury had no authority to delegate his powers to the Commissioner of Customs and that the delegation permitted by 5 U.S.C.A. § 281b(a), 44 Stat. 1382, referred only to actions in respect to the importation or entry of *merchandise,* and not as to the remission of duties upon *expenses of repairs.*

In the instant case, it appears that certain repairs were made to the vessel SS. Elly (an American vessel engaged in foreign trade) in Trinidad in December 1951 and in Buenos Aires, Argentina, in January 1952. According to the testimony and the exhibits, some of the tubes in the starboard boiler burned out before arrival at Trinidad, and, during the ensuing voyage to Buenos Aires, the inboard feed pump and the main circulator did not operate properly. Damage to the port boiler was first noticed when the vessel lay afloat at Buenos Aires. Consequently, repairs were made, which were duly entered upon return of the vessel to this country. Application was then made by the master to the Bureau of Customs at Baltimore, Md., for remission of the duties on said repairs (plaintiff's exhibit 5). The application was denied, for the reason, as stated by the assistant collector, that the evidence

did not show the damage was proximately caused by stress of weather or other casualty (plaintiff's exhibit 19).

Thereafter, a petition for review of the collector's decision was filed and transmitted by the collector to the Bureau of Customs. On December 24, 1952, the Chief, Division of Classification, Entry, and Value, denied the relief prayed for under section 466, on the ground that he was not satisfied that the repairs were necessitated by stress of weather or other casualty; but he held that certain items, such as cleaning the port boiler, were not subject to duty as repairs (plaintiff's collective exhibit 20).

In a recent decision in the case of International Navigation Co., Inc., v. United States, 35 Cust.Ct. 52, C.D. 1721, which involved the same vessel (under another name) but a different voyage, we held that the action of the assistant collector at Norfolk denying a similar application for remission and the liquidation based thereon were invalid and void on the ground that the authority to remit or refund duties assessed under section 466 was vested in the Secretary of the Treasury, and that while such authority had been delegated in the first instance to the Commissioner of Customs and then to the Chief of the Division of Classification, Entry, and Value, it had not been delegated to collectors or assistant collectors.

In that case, we pointed out that, under section 3(a) of chapter 348 of the laws of 1927, 44 Stat. 1382, 5 U. S.C.A. § 281b, *infra*, the Secretary of the Treasury was given authority to confer upon the Commissioner of Customs or any of the officers of the Bureau of Customs any of the rights, privileges, powers, or duties in respect to the importation or entry of merchandise into, or exportation from, the United States, vested in the Secretary of the Treasury by the Tariff Act of 1922 or any other law. Pursuant to this section, the Secretary's powers were conferred upon the Commissioner of Customs by various

orders of the Secretary, including T.D. 52121, which also provided that such powers might be exercised by other officers, as designated by the Commissioner with the approval of the Secretary. The Commissioner, with the approval of the acting Secretary of the Treasury, thereafter designated the Chief of the Division of Classification, Entry, and Value as the officer who should make decisions relating to the assessment of duties on equipment or repairs of vessels under section 466 and decisions remitting or refunding such duties. T.D. 52331, as amended by T.D. 52394. We found that at the time of entry there was no clear and explicit delegation of such authority to the collector and that his action denying an application for remission under section 466 was invalid and void.

In the instant case, there was not only a decision by the collector, which was unauthorized, but there was also a decision by the Chief of the Division of Classification, Entry, and Value. Since the latter is an officer of the Bureau of Customs upon whom the powers of the Secretary may be conferred, pursuant to 5 U.S.C. § 281b, *infra*, and since at the time of entry herein the Secretary's authority under section 466 had been delegated to him (T.D. 52331, as amended by T.D. 52394) and such delegation had been continued under Reorganization Plan No. 26, 64 Stat. 1280, 5 U.S.C.A. § 241 note, by Treasury order (15 F.R. 6521), his decision is not invalid on the ground that it was made by an unauthorized person. While the decision in the instant case is in form an affirmance of the collector's action, it is indicated therein that the Bureau of Customs, by the Chief of the Division of Classification, Entry, and Value, examined the evidence and made a decision of its own (plaintiff's collective exhibit 20). Therefore, it is unnecessary to direct here, as we did in the former case, that the collector submit the application for remission of duties to the Secretary of the Treasury or his duly empowered

representative, so that a decision may be made by him. A decision has already been made by an authorized representative of the Secretary of the Treasury and is controlling herein.

■ It is further contended that the decision is invalid on the ground that the Secretary's authority to delegate under 5 U.S.C.A. § 281b, *infra,* is limited to his rights, privileges, powers, and duties in respect to the importation, entry, or exportation of *merchandise.* The statute, section 3(a) of chapter 348 of the laws of 1927, 44 Stat. 1382, 5 U.S.C.A. § 281b, provides:

"(a) The Secretary of the Treasury is authorized to confer or impose upon the Commissioner of Customs or any of the officers of the Bureau of Customs any of the rights, privileges, powers, or duties, in respect of the importation or entry of merchandise into, or exportation of merchandise from, the United States, vested in or imposed upon the Secretary of the Treasury by the Tariff Act of September 21, 1922 (ch. 356, 42 Stat. 858), or any other law."

Section 466 of the Tariff Act of 1930, supra, provides that the expenses of repairs of vessels made in a foreign country are liable to entry and the payment of duty. Section 498 of said tariff act, 19 U.S.C.A. § 1498, grants authority to the Secretary of the Treasury to prescribe rules and regulations for the declaration and entry of merchandise within the provisions of section 466, relating to repairs and equipment of vessels. These sections indicate an intent on the part of Congress that all items dutiable under section 466 shall be regarded, so far as declaration and entry are concerned, as merchandise. Pacific Transport Lines, Inc., v. United States, 29 Cust.Ct. 21, 27, C.D. 1439. This is also true as to the Secretary's authority to delegate under 5 U.S.C.A. § 281b, supra. The construction claimed for by plaintiff would result in permitting the Secretary to delegate his powers as to the portion of section 466 which covers articles or materials but not as to the other items. Such an absurd or anomalous result is to be avoided. Hensel v. United States, 3 Ct.Cust. Appls. 117, T.D. 32366; Blass Co. (Inc.) v. United States, 12 Ct.Cust.Appls. 481, T.D. 40692; International Forwarding Co. v. United States, 16 Ct.Cust.Appls. 539, T.D. 43264. In our view, the Secretary had the authority under 5 U.S. C.A. § 281b to delegate the powers granted to him under section 466 as to the remission of duties on all of the items therein.

Plaintiff claims, in addition, that the criterion employed in the decision was invalid as a matter of law; that the word "casualty" "was interpreted, contrary to its plain meaning, to be the result of some unforeseen and unusual 'extrinsic' force."

The collector's decision states that, in the absence of evidence of some unforeseen and unusual extrinsic force, the damage must be attributed to ordinary wear and tear. There is nothing to show that the division chief arrived at his conclusion on that ground, and it is his decision which is controlling herein. It states only that the Bureau was not satisfied that the repairs were necessitated by stress of weather or other casualty.

■ The situation here is similar to that involved in the Waterman case, supra, where the Commissioner refused to remit the duty on the ground that there was no showing that the repairs were occasioned by stress of weather or other casualty. In that case, it was held that it was the purpose of Congress to confer upon the Secretary of the Treasury, or his duly authorized representative, exclusive and final authority to determine from the evidence submitted whether or not duties should be remitted. Therefore, this court has no authority to review the decision that the repairs were not necessitated by stress of weather or other casualty.

See also Lykes Bros. (Ripley Steamship Co.) v. United States, 6 Cust.Ct. 467,

C.D. 518, and Portland California Steamship Co. v. United States, 13 Cust.Ct. 170, C.D. 889. In the case first cited, it was claimed that the evidence furnished the Secretary of the Treasury was of such character that the duties should have been refunded. The court said (p. 471):

"* * * this court is without jurisdiction to entertain protests made against the refusal of the Secretary of the Treasury to grant remission of duty levied by the collector upon ship's repairs under the provisions of section 466 of the Tariff Act of 1930. It is therefore unnecessary for us to refer here to the evidence adduced by the plaintiff in an effort to establish that the repairs were necessitated by stress of weather or other casualty so as to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination, which apparently in this case was Hull, England. * * *"

In the Portland California Steamship Co. case, the court said (pp. 174–175):

"Let us examine section 3115, as amended, supra. It certainly is plainly and unequivocally there set out that *if good and sufficient evidence is furnished* as to stress of weather or other casualty *the Secretary of Treasury is authorized to remit or refund such duties.* This court would have no jurisdiction to decide whether or not the evidence upon which the Secretary of the Treasury refused to act was in fact "good and sufficient" to warrant a remission of duties by him. * * * Section 3115, on the other hand gives to the Secretary of the Treasury the sole authority within his discretion to remit the duty authorized in section 3114, supra, when in his opinion good and sufficient evidence is presented that the cost was incurred because of certain circumstances. * * *" [Italics quoted.]

Parenthetically, it may be noted that in a case in which the jurisdiction of the court was not discussed, Dollar Steamship Lines, Inc., Ltd. v. United States, 5 Cust.Ct. 23, C.D. 362, the court pointed out that the term "casualty" is used is used in the statute in conjunction with the phrase "stress of weather" and that a casualty similar to "stress of weather" would be "of necessity a happening that comes with the violence of the turbulent forces of nature."

When the Tariff Act of 1930 was being enacted, the House of Representatives amended section 3115 as it appeared in section 466, Tariff Act of 1922, to provide that the Secretary of the Treasury might remit duties upon evidence—

"(1) That such equipment or parts thereof or repair parts or materials were purchased, or that such expenses of repairs were incurred, in a foreign country, in order to maintain such vessel in a seaworthy condition, or to repair damages suffered or to replace equipment damaged or worn out during the voyage, or to maintain such vessel in a sanitary and proper condition for the carriage of cargo or passengers; * * *."

This wording was deleted by the Senate Finance Committee, and the language which now appears in the statute substituted. It is evident that under the provision as enacted it was not intended that duties should be remitted in all cases where repairs were made because of damages suffered or equipment damaged or worn out during the course of a voyage, even though such repairs were necessary to maintain the vessel in a seaworthy condition. It was only where the damage occurred by reason of some serious or extraordinary event, described as "stress of weather or other casualty," that remission was permitted.

For the reasons stated, the motion of the Government to dismiss the first five claims in the protest is granted.

 It is also claimed in the protest herein that certain items do not constitute repairs and are not properly dutiable under section 466, supra. This question is subject to protest and review on the merits by this court under the provisions of section 514 of the Tariff Act of 1930, 19 U.S.C.A. § 1514, Portland California Steamship Co. v. United States, supra.

The first item (item 6 of the protest) covers amounts paid in Argentina for transportation of men and materials and for customs permits. These charges were included in the total amount of the bill for the cost of the repairs made in Argentina (plaintiff's collective exhibit 6). A breakdown of the bill, prepared by the manager of the repairing company (plaintiff's exhibit 18), describes the items as follows:

a) One (I) Custom's Permit for six boxes of tools, also burning and electric-welding plants.... $58.00

b) One (I) Custom's Permit for machinery parts to be repaired ashore..... $62.00

c) Thirty-five (35) round-trips of shop's truck to ship in the port, transporting work men and materials during the repairs ............... $1,130.00

George Caras, an officer of the plaintiff corporation, testified that parts of the engine were taken ashore to be repaired and then returned to the ship; that Argentine customs duties were paid on those items; and that the transportation costs were incurred for taking ashore the men who did the repairs and the materials to be used. All of this was necessary to perform the work.

The next item (item 7 of the protest) covers an amount paid in Trindad for launch hire. According to a stipulation of counsel (defendant's exhibit A) the amount was prorated between the dutiable and the free items on the invoice of the Trinidad Trading Co., Ltd. The witness Caras testified that the vessel was at anchor, and the launch was necessary for the repair gang to go back and forth from the vessel, without which the work could not have been performed.

The transportation of men and materials and the payment of fees or charges to a foreign Government were not part of the actual repairs nor the cost of labor in connection therewith. It has been held that expenses for drydocking a vessel while undergoing repairs in a foreign port are not subject to duty as "expenses of repairs." United States v. George Hall Coal Co., C.C., 134 F. 1003, 1004, T.D. 26038; Geo. Hall Coal Company v. United States, 11 Treas.Dec. 318, T.D. 27154; States Steamship Co. v. United States, 73 Treas.Dec. 718, T.D. 49531. Even though the vessel had to be placed in drydock in order to be repaired, the expenses therefor were not considered part of the actual repairs. In a recent case, we held that the charges for rental of a jitney and driver to move dunnage on the dock were not dutiable as part of the ship's equipment or the installation thereof. American Mail Line, Ltd. v. United States, 34 Cust.Ct. 197, C.D. 1704, affirmed on rehearing, 35 Cust.Ct. 142, C.D. 1735. Likewise, the charges herein for launch hire, for the transportation of men and materials, and for fees or charges paid to a foreign Government are not dutiable as expenses of repairs.

The last item of the protest claims that there was an error in the calculation of the duty on liquidation. According to a statement in the brief, this claim relates to the rate of exchange used by the collector in converting the currency of the Argentina repair bill.

 Expenses of repairs are subject to duty on the basis of the cost in foreign currency, converted at the proclaimed or certified rate under section 522 of the Tariff Act of 1930, 31 U.S.C.A. § 372, and not at a rate agreed upon by

the parties. Pacific Transport Lines, Inc. v. United States, supra.

In a letter to the collector, dated February 9, 1953 (plaintiff's collective exhibit 22), the attorney for the plaintiff stated:

"* * * The amount of U. S. dollars actually paid for the Argentine repairs was $2,797.46. This payment was made by means of a transfer effected through a Liberian ship-owning corporation which had funds available in Buenos Aires. The rate used was determined by a consultation of the then prevailing bank rates for the purchase in New York of funds for vessel repairs in Argentina. You will note that the Argentine exchange control provides for varying exchange rates depending upon the substance of the transaction involved."

The collector liquidated the entry and converted the currency at the rate of $0.0707500 per Argentine peso (defendant's exhibit A). This was the free rate of exchange certified for February 7, 1952 (T.D. 52922). Why this rate was selected does not appear. According to the record, the repairs at Buenos Aires were completed and the bill rendered on January 31, 1952. This is the date used on the entry as the date of the repairs. When the vessel sailed from Argentina has not been disclosed.

The rate certified for the date of exportation is properly applicable, and it may be that the collector erred in the rate used. Since the evidence does not establish the date of exportation, it must be held that plaintiff has not overcome the presumption of correctness attaching to the collector's action.

The protest herein is sustained as to items 6 and 7, covering the items of transportation and customs permits and launch hire, which items we hold are not subject to duty under section 466 of the Tariff Act of 1930. The protest is overruled as to item 8 and dismissed as to all other items. Judgment will be rendered accordingly.