Slip Op. 99-100

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
SEA-LAND SERVICE, INC.;                 :
AMERICAN PRESIDENT LINES, LTD.,         :
                                        :
                    Plaintiffs,         :
                                        :
        v.                              :    Consol. Court No.
                                        :    96-02-00398
UNITED STATES,                          :
                                        :
                    Defendant.          :
_____:

     Plaintiffs, Sea-Land Service, Inc. ("Sea-Land") and American President Lines, Ltd. ("APL"), move, pursuant to USCIT R. 56, for summary judgment on the grounds that the undisputed facts show that, as a matter of law, the United States Customs Service ("Customs") misapplied the decision of Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539 (Fed Cir. 1994), in assessing duties under 19 U.S.C. § 1466(a) (1994) on plaintiffs' entries of repairs completed on their United States-flagged vessels while abroad. Specifically, plaintiffs claim that Customs: (1) erred in finding that plaintiffs were per se liable for duties on vessel repair expenses under 19 U.S.C. § 1466(a) without performing Texaco's mandated case-by-case analysis of each expense to determine if such expense would not have been incurred "but for" the dutiable repair work; (2) improperly applied dicta in Texaco concerning certain vessel repair expenses to similar expenses at issue in this case; (3) failed to properly apply an alleged second prong of Texaco's "but for" test by not providing notice in the Federal Register as required under 19 U.S.C. § 1315(d) (1994) when Customs issued rulings changing various established and uniform practices ("EUPs") that previously treated certain vessel repair expenses at issue in this case as nondutiable; and (4) violated 19 U.S.C. § 1625(c) (1994) by issuing protest review decisions modifying or revoking prior Customs interpretive rulings or decisions without giving interested parties notice and opportunity to comment as required under the statute.  Plaintiffs also argue that Customs inappropriately applied a pro rata duty assessment formula to certain vessel repair expenses that is inconsistent with Texaco and 19 U.S.C. § 1466(a).  However, since such expenses were not raised in this case, they request that the proration issue be dismissed or severed from this action to allow them to litigate the matter in related actions which more accurately raise the issue.  Plaintiffs

also request that the Court hold the vessel repair entries as nondutiable and order Customs to reliquidate the protested entries and refund all excess duties plus interest as provided by law.

Defendant opposes plaintiffs' motion and cross-moves, pursuant to USCIT R. 56, for summary judgment, claiming that the entries were properly liquidated as dutiable pursuant to 19 U.S.C. § 1466(a). In particular, defendant asserts that: (1) Customs conducted a case-by-case, rather than per se, "but for" analysis for each vessel repair expense at issue; (2) Customs properly applied the "but for" test, rather than dicta, as enunciated by Texaco to such expenses; (3) Texaco did not establish a second prong test requiring Customs to find that no EUPs exist under 19 U.S.C. § 1315(d) before it can impose duties on vessel repair-related expenses; (4) the provisions of 19 U.S.C. § 1625(c) are inapplicable in this case; and (5) this Court lacks jurisdiction to address plaintiffs' proration matter and, therefore, summary judgment is improper on this issue.

**Held:** Plaintiffs' motion for summary judgment is denied and defendant's cross-motion is granted. This action is dismissed.

[Plaintiffs' summary judgment motion denied; defendant's cross-motion granted. Case dismissed.]

Dated: September 23, 1999

Arter & Hadden LLP (Myles J. Ambrose and Evelyn M. Suarez); of counsel: Robert S. Zuckerman, for plaintiff Sea-Land Service, Inc.

Garvey, Schubert & Barer (E. Charles Routh and Carol L. Saboda) for plaintiff American President Lines, Ltd.

David W. Odgen, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara S. Williams); of counsel: Karen P. Binder, Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

Collier, Shannon, Rill & Scott, PLLC (Lauren R. Howard) for Shipbuilders Council of America, Inc., amicus curiae in support of defendant's cross-motion for summary judgment.


**OPINION**

**TSOUCALAS, Senior Judge:**  This matter is before the Court on cross-motions for summary judgment pursuant to USCIT R. 56.  In their motion for summary judgment, plaintiffs, Sea-Land Service, Inc. ("Sea-Land") and American President Lines, Ltd. ("APL"), seek to recover duties assessed by the United States Customs Service ("Customs") under 19 U.S.C. § 1466(a) (1994) on plaintiffs' entries of repairs completed on their United States flagged-vessels while abroad.  Plaintiffs request that the Court hold the vessel repair entries as nondutiable and order Customs to reliquidate the protested entries and refund all excess duties plus interest as provided by law.  Defendant counters that the entries were properly liquidated as dutiable pursuant to 19 U.S.C. § 1466(a).  For the reasons set forth in the opinion which follows, the Court grants defendant's cross-motion for summary judgment and denies plaintiffs' motion.  The action is dismissed.

**BACKGROUND**

I.   **Texaco's "But For" Test**

This case involves Customs' application of Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539 (Fed. Cir. 1994). In Texaco, the United States Court of Appeals for the Federal Circuit ("CAFC") affirmed this Court's holding that post-repair cleaning and protective covering expenses related to repairs performed on a United States-flagged vessel by foreign labor while abroad, were properly dutiable as "expenses of repairs" pursuant to the vessel repair statute, 19 U.S.C. § 1466(a),[1] because the expenses were an integral part of the repair process and would not have been necessary "but for" the dutiable repairs. See Texaco, 44 F.3d at 1543-50.

---

[1]   Title 19, United States Code, § 1466(a) provides in pertinent part:

**(a) Vessels subject to duty; penalties**

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country.

19 U.S.C. § 1466(a) (1994).

The CAFC in Texaco also provided clear guidance for interpreting the phrase "expenses of repairs" in 19 U.S.C. § 1466(a). See id. at 1543-45. The CAFC found that "the language 'expenses of repairs' is broad and unqualified." Id. at 1544. In particular, the CAFC interpreted "'expenses of repairs' as covering all expenses (not specifically excepted in the statute) which, but for dutiable repair work, would not have been incurred. Conversely, 'expenses of repairs' does not cover expenses that would have been incurred even without the occurrence of dutiable repair work." Id. To interpret the statute any more restrictively would, according to the CAFC, thwart Congress' intent to make the statute's application broad in scope. See id. Indeed, the CAFC noted that such a "but for" interpretation effectuates the statute's clear purpose of protecting United States shipbuilding and repair industry. See id. at 1544-45.

The CAFC further found that to the extent that non-binding judicial authority relied upon by plaintiffs in Texaco was inconsistent with the court's "but for" interpretation, it was "not persuaded . . . to interpret 'expenses of repairs' any more restrictively than the plain language of the statute warrants." Id. at 1546. Specifically, the CAFC addressed three cases: (1) American Viking Corp. v. United States, 37 Cust. Ct. 237, 245, C.D. 1830, 150 F. Supp. 746, 752 (1956) (holding that expense of

providing lighting needed to perform a dutiable repair was not dutiable as an expense of the repair); (2) International Navigation Co. v. United States, 38 Cust. Ct. 5, 12, C.D. 1836, 148 F. Supp. 448, 455 (1957) (holding that expenses to transport a foreign repair crew to and from an anchored vessel being repaired, which expenses the court specifically found were necessary to perform the work, were not dutiable as expenses of repairs); and (3) Mount Washington Tanker Co. v. United States, 1 CIT 32, 42, 505 F. Supp. 209, 216 (1980) (holding that expenses for compensating foreign repair crew members for their time spent traveling between their home country and a vessel anchored at sea off another foreign port were not dutiable as an expense of the dutiable repairs performed by the repair crew). See id. at 1546-47. The CAFC determined that the vessel repair-related expenses at issue in these three cases would also have been viewed as coming within 19 U.S.C. § 1466(a) if a "but for" approach was applied. See id. The CAFC, therefore, concluded that these cases were "incorrectly decided." Id. at 1547.

Finally, the CAFC rejected plaintiffs' claim in Texaco that Customs' assessment of duties on the cleaning and protective covering expenses was improper because it was based on an interpretation of "expenses of repairs" that was a change in established and uniform practice ("EUP"), as provided by a Treasury decision, and that Customs made the change without giving notice in

the Federal Register as required under 19 U.S.C. § 1315(d) (1994).

See id. at 1547-48.   In particular, plaintiffs asserted that

Treasury Decision ("T.D.") 39443, 43 Treas. Dec. 99 (1923),

established an interpretation for "expenses of repairs" which was

inconsistent with Customs' assessment of duties in the Texaco case.

See Texaco, 44 F.3d at 1547.   Plaintiffs claimed that T.D. 39443

interpreted "expenses of repairs" under 19 U.S.C. § 1466(a) "as

covering only those expenses incurred for work directly involved in

the actual making of repairs" and that, therefore, under this

standard, cleaning and protective covering expenses were "not

'expenses of repairs' within the meaning of the statute." Id.  The

CAFC disagreed that T.D. 39443 established a narrow standard for

"expenses of repairs" and, in fact, the court concluded that it

provided nothing with respect to the interpretation of "expenses of

repairs."   See id. at 1548.

After finding this Court properly adopted a "but for" standard

for "expenses of repairs," the CAFC concluded that the expenses at

issue in Texaco were properly assessed with the vessel repair duty

under 19 U.S.C. § 1466(a).

## II.  Customs' Application of <u>Texaco</u>

### A.    HQ Memorandum 113308

Recognizing that the CAFC's decision in <u>Texaco</u> was not only dispositive for the expenses at issue in the case, but also instructive as to Customs' administration of the vessel repair statute with respect to the interpretation of the term "expenses of repairs" contained therein, the Assistant Commissioner for Customs Office of Regulations and Rulings ("OR&R") issued Headquarters ("HQ") memorandum 113308 to Customs Regional Director, Commercial Operations Division, New Orleans, dated January 18, 1995, and subsequently published it in the <u>Customs Bulletin and Decisions</u>. <u>See</u> 29 <u>Cust. B. & Dec.</u> 59 (Feb. 8, 1995).  In that memorandum, copies of which were disseminated to two other field offices charged with the liquidation of vessel repair entries, Customs stated that pursuant to <u>Texaco</u>, foreign repair expenses previously considered nondutiable would possibly "constitute dutiable 'expenses of repairs' under the 'but for' test." <u>Id.</u> at 60.  The memorandum instructed that any foreign repair costs contained in the vessel repair entries not finally liquidated as of the date of the CAFC's <u>Texaco</u> decision (that is, Dec. 29, 1994), should be liquidated as dutiable "expenses of repairs" provided they pass <u>Texaco's</u> "but for" test.  <u>See id.</u>

**B.    HQ Memorandum 113350**

In response to the HQ memorandum 113308, plaintiffs and other American vessel owners/operators requested a meeting with Customs to discuss Customs' implementation of Texaco's "but for" test.  See Def.'s Mem. Supp. Cross-mot. Summ. J. at Ex. 3.  On February 22, 1995, representatives of Sea-Land and APL met with the Assistant Commissioner of OR&R and other Customs staff and urged Customs to rescind HQ memorandum 113308, but Customs refused to retract it. See id.

Nevertheless, upon further review of the matter, the Assistant Commissioner of OR&R again issued a HQ memorandum, denominated 113350, to the Regional Director, Commercial Operations Division, New Orleans, dated March 3, 1995, and subsequently published in the Customs Bulletin and Decisions, which clarified the effective date of HQ memorandum 113308.  See 29 Cust. B. & Dec. 24 (Apr. 5, 1995).[2]  The HQ memorandum 113350 provided that instead of assessing duties on vessel repair entries unliquidated at the time of CAFC's Texaco decision, Customs would limit its assessment to entries filed on or after the date of that decision.  See id. at 25.  With respect to the vessel repair entries filed prior to the Texaco decision, Customs would retroactively apply Texaco's "but

_____

[2]  Customs also published the text of the Texaco decision in the Customs Bulletin and Decisions.  See 29 Cust. B. & Dec. 19 (Mar. 8, 1995).

for" test only to the post-repair cleaning and protective covering expenses that were directly decided by the CAFC in that case. See id.

### C.    Assessment of Duties

From January 1995 through March 1996, Sea-Land and APL declared and entered with Customs the vessel repair expenses that are at issue here as required under 19 C.F.R. § 4.14(b) (1995 & 1996).[3] The vessel repair entries involved expenses for work performed abroad on several United States-flagged vessels by foreign labor. The entries included expenses such as transportation, travel, equipment rental, meal, administrative, insurance and tax costs. None of the entries concerned dry-docking expenses. Customs examined every entry to determine whether each expense was incurred "but for" dutiable repairs. For those expenses which Customs found satisfied the "but for" test, Customs liquidated the entries and assessed duties pursuant to 19 U.S.C. § 1466(a); where Customs found that the expenses did not pass the "but for" test, no duties were imposed.

---

[3] A vessel owner (or master) is required, upon first arrival of the vessel in the United States, to declare to Customs all repairs made outside of the United States, regardless of the dutiable status of the expenses for repairs. See 19 C.F.R. § 4.14(b)(1) (1995 & 1996). The vessel owner (or master) also must file entry of repairs with Customs. See id. § 4.14(b)(2).

## III. Procedural History

After all the liquidated duties on the applicable vessel repair entries were paid as required by 28 U.S.C. § 2637(a) (1994), Sea-Land and APL filed administrative protests for the liquidations. In due course, Customs denied the protests, whereupon Sea-Land and APL subsequently filed separate actions before this Court. These actions were consolidated on May 20, 1997. The consolidated action was designated as a test case for all further entries pursuant to USCIT R. 84(c). On July 7, 1998, Sea-Land and APL jointly moved for summary judgment to recover any and all excess duties together with interest assessed by Customs on the protested vessel repair entries under 19 U.S.C. § 1466(a). Defendant cross-moved for summary judgment on December 7, 1998, maintaining that Customs properly assessed such duties. On December 17, 1998, this Court allowed Shipbuilders Council of America, Inc., a national nonprofit trade association representing United States shipyards engaged in the construction and repair of ocean-going vessels, to participate as amicus curiae in support of the defendant's position. Oral argument was heard on June 29, 1999.

## DISCUSSION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1994).

### I.   Standard of Review

"On a motion for summary judgment, it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action.  The court may not resolve or try factual issues on a motion for summary judgment." Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) (citations omitted).  In ruling on cross-motions for summary judgment, if no genuine issue of material fact exists, the court must determine whether either party "is entitled to a judgment as a matter of law."  USCIT R. 56(d); see Skaraborg Invest USA, Inc. v. United States, 22 CIT __, __, 9 F. Supp. 2d 706, 708 (1998); Phone-Mate, 12 CIT at 577, 690 F. Supp. at 1050.  This is the same standard set forth in Fed. R. Civ. P. 56(c).  See Texaco, 44 F.3d at 1543.

In this case, the movants stipulated to the following facts: (1) Customs issued certain HQ rulings, as enumerated in the pleadings, that have not been revoked, rescinded, amended or noted as a change of practice or position pursuant to 19 U.S.C. § 1625(a) and 19 C.F.R. § 177.10(c); (2) such HQ rulings relate to the

dutiability of one or more items of the plaintiffs' protests; (3) none of the protests relates to duty assessed under 19 U.S.C. § 1466(a) for cleaning or covering expenses; and (4) some of the protests relate to duty assessed to certain items on a pro rata basis apportioned by Customs to reflect what Customs alleges are the dutiable and nondutiable foreign costs of an entry. See Stip. Facts at ¶ 1-5 (Aug. 21, 1997). The movants agree, and the Court finds, that there are no genuine material issues of fact in dispute and this action may be decided on motion for summary judgment.

## II. Customs' Alleged Per Se Application of Texaco's "But For" Test

Plaintiffs argue that Customs violated the doctrine of stare decisis because, contrary to Texaco, it had taken the position that plaintiffs were per se liable for the 50-percent ad valorem duty on various vessel repair expenses under 19 U.S.C. § 1466(a) without performing a case-by-case "but for" analysis for each expense. See Pls.' Mem. Supp. Mot. Summ. J. at 7. Specifically, plaintiffs note that Texaco held that only post-repair cleaning and protective covering expenses are dutiable as "expenses of repairs" under 19 U.S.C. § 1466(a). See id. at 10. Since none of the protests in this case involved cleaning or covering expenses, see Stip. Facts at ¶ 4, plaintiffs assert that Texaco requires Customs to apply a "two-prong" test on a case-by-case, rather than a per se, basis to

determine whether a particular expense is dutiable as an expense of repair, see Pls.' Mem. Supp. Mot. Summ. J. at 10-15.

Defendant counters that Customs individually applied the "but for" test to each and every vessel repair-related expense at issue, rather than on a per se basis and correctly determined that each of plaintiffs' dutiable expenses were incurred "but for" dutiable vessel repairs. See Def.'s Mem. Supp. Cross-mot. Summ. J. at 9-18.

The Court agrees with the defendant that Customs properly conducted a case-by-case "but for" analysis for each expense at issue. Customs' HQ memoranda 113308 and 113350 lend support to such a conclusion. Rather than directing its field offices to automatically assess the 50-percent ad valorem duty on every vessel repair entry, HQ memorandum 113308 instructed that "any . . . costs contained in vessel repair entries . . . should be liquidated as dutiable as 'expenses of repairs' provided they pass the 'but for' test." 29 Cust. B. & Dec. 59, 60 (Feb. 8, 1995) (emphasis in original). Likewise, HQ memorandum 113350 noted that "a myriad of foreign repair expenses previously accorded duty-free treatment would, under certain circumstances, no longer receive such treatment." 29 Cust. B. & Dec. 24 (Apr. 5, 1995). Indeed, a review of the entries in these consolidated actions establish that Customs not only instructed its field offices to perform a case-by-case "but for" analysis of each expense, but Customs also actually

performed this analysis.  Various entries show that Customs found some expenses were dutiable, while other expenses, even within the same entry, were determined to be nondutiable.


### III. Customs' Alleged Application of <u>Texaco</u> <u>Dicta</u>

Plaintiffs assert that the CAFC's statements in <u>Texaco</u> concerning lighting, transportation and travel expenses were <u>dicta</u> without any <u>stare</u> <u>decisis</u> effect because such expenses were not directly before the CAFC in that case.  <u>See</u> Pls.' Mem. Supp. Mot. Summ. J. at 10-11.  In particular, plaintiffs note that these expenses were mentioned in previous cases (that is, <u>American Viking</u> (lighting expenses), <u>International Navigation</u> (repair crew transportation expenses) and <u>Mount Washington</u> (travel time compensation expenses)) used by the CAFC to further demonstrate the validity of the "but for" test.  <u>See id.</u> at 11.  Plaintiffs note that Customs' position in this case that <u>Texaco</u> constitutes <u>stare decisis</u> for resolving expenses, which do not concern clean up or protective covering expenses directly involved in <u>Texaco</u>, is untenable because it goes beyond well-established rules which mandate applying the <u>stare</u> <u>decisis</u> doctrine only to those cases with similar fact patterns.  <u>See id.</u>  Plaintiffs, therefore, argue that Customs improperly acted by applying such <u>dicta</u> to similar expenses at issue in this case.  <u>See id.</u>

Defendant argues that the CAFC's determination in Texaco finding that lighting, transportation and travel expenses are dutiable is stare decisis, rather than dicta, because the determination was essential to the court's finding that the phrase "expenses of repairs" under 19 U.S.C. § 1466(a) implicates the "but for" standard. See Def.'s Mem. Supp. Cross-mot. Summ. J. at 17. In the alternative, defendant asserts that Texaco's "but for" test is still binding precedent here and must be applied to all expenses to determine those that are dutiable. See id. at 17-18. In particular, defendant claims that the CAFC's analysis in Texaco of the vessel repair statute so as to require the application of the "but for" test to each expense was an issue of law and, therefore, is binding law in this case. See id.

The Court rejects plaintiffs' argument that Customs acted improperly by applying alleged dicta from Texaco. Even if the CAFC's determinations in Texaco on such expenses "might" technically qualify as dicta and, therefore, might not be binding in a subsequent proceeding such as this one, see generally King v. Erickson, 89 F.3d 1575, 1582 (Fed. Cir. 1996) (defining dicta as "[w]ords of an opinion entirely unnecessary for the decision of the case") (citations omitted), rev'd sub nom. on other grounds, 522 U.S. 262 (1998), the Court nevertheless finds that Customs acted properly. Under principles of stare decisis, Customs was still

bound to apply Texaco's mandate of assessing the vessel repair duty on any and all repair expenses in this case meeting the "but for" test, including, but not limited to, lighting, transportation and travel expenses.

## IV.  Texaco's Alleged Two-Prong Test

### A.  Applicability of 19 U.S.C. § 1315(d)

Plaintiffs maintain that Texaco established a "two-prong" test for determining dutiability of vessel repair expenses under 19 U.S.C. § 1466(a).  See Pls.' Mem. Supp. Mot. Summ. J. at 10-15. Under the first prong, plaintiffs assert that Customs must determine whether a particular expense met the "but for" standard, that is, whether the expense would not have been necessary "but for" dutiable vessel repairs.  See id. at 12.  Even if the expense is found to be dutiable under this standard, plaintiffs contend that the second prong requires that Customs also find that assessing duties on the particular expense at issue does not run counter to an EUP of nondutiability of that expense.  See id. at 14.  If the expense  is contrary to such an EUP, plaintiffs assert that Customs must first comply, under Texaco, with the notice requirement of 19 U.S.C. § 1315(d), and now the notice-and-comment requirements of 19 U.S.C. § 1625(c) (1994), before ruling that the expense is dutiable.  See id.  Plaintiffs assert that Customs failed: (1) to properly apply Texaco's two-prong test; and (2) to

comply with the statutory notice-and-comment requirements before assessing duties to expenses at issue in this case. <u>See id.</u> at 11-15.

With respect to the second prong, plaintiffs first suggest that Customs' protest review decisions, not the CAFC's <u>Texaco</u> decision, changed various EUPs that found certain vessel repair expenses at issue in this case as nondutiable. <u>See</u> Pls.' Reply Opp'n to Def.'s Cross-mot. Summ. J. at 6-11. These protest review decisions, according to plaintiffs, triggered the notice requirement of § 1315(d),[4] which Customs neglected to comply with here. <u>See id.</u> Plaintiffs claim that the change in EUPs were acknowledged by Customs in HQ memorandum 113308 for it provided a "finding" of various EUPs by the Secretary of the Treasury under 19

---

[4]    Title 19, United States Code, § 1315(d) provides in pertinent part:

**(d)  Effective date of administrative rulings resulting in higher rates**

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.

19 U.S.C. § 1315(d) (1994).

U.S.C. § 1315(d).[5]  See id. at 6-7.  Even absent such a formal
finding, plaintiffs claim that de facto EUPs existed because (1)
hundreds of HQ rulings, which plaintiffs identified in their
complaints as being revoked by Customs and to which Customs
stipulated in issuing such rulings, clearly established a series of
EUPs; and (2) the language of HQ memoranda 113308 and 113350
clearly provided that Customs had EUPs of not considering the
expenses at issue as dutiable.  See id. at 3-10.

Plaintiffs further argue that even if this Court were to find
that they had not carried their burden of proof of showing de facto
EUPs at this stage of the proceedings, this does not mean that
Customs is entitled to summary judgment; rather, they contend this
simply raises an issue of proof which would have to be resolved at
a trial.  See id. at 9.  Plaintiffs also maintain that the alleged
protest review decisions applied the "but for" test to determine
whether a particular expense was a dutiable expense of repair

---

[5]  HQ memorandum 113308 stated in pertinent part:

It is readily apparent that this case has wide-ranging
ramifications with respect to Customs liquidation of
vessel repair entries. For example, as you well know we
currently do not consider the following foreign costs
dutiable under the vessel repair statute: air, crane,
drydocking charges, electricity, travel/transportation,
launch use, lodging, security and staging. . . . [T]his
list of costs is not all inclusive.

29 Cust. B. & Dec. 59, 59-60 (Feb. 8, 1995).

without taking the second step under Texaco of analyzing whether EUPs existed for the various expenses.  See id. at 9-10.

Defendant argues that Texaco did not establish a second prong test requiring Customs to find that no EUP exists under 19 U.S.C. § 1315(d) before it can impose duties on vessel repair-related expenses.  See Def.'s Mem. Supp. Cross-mot. Summ. J. at 19. Moreover, defendant asserts that 19 U.S.C. § 1315(d)'s requisite notice in the Federal Register was not violated here.  See id. at 18.  Specifically, defendant claims that there was no "administrative ruling" resulting in the imposition of a higher rate of duty on "imported merchandise"[6] under an EUP because HQ memoranda 113308 and 113350, Customs' protest denials or any of plaintiffs' unnamed and unidentified protest review decisions did not result in the assessment of higher duties. See Def.'s Mem. Reply to Pls.' Opp'n to Def.'s Cross-mot. Summ. J. at 7-8.  Rather, defendant contends that the CAFC's decision in Texaco mandated the change.  See id. at 8.

In the alternative, defendant argues that even if one assumes that an "administrative ruling" resulted in the assessment of

_____

    [6]  With respect to "imported merchandise," the CAFC clarified that "19 U.S.C. § 1498(a)(10) . . . indicates an intention by Congress that expenses within the vessel repair statute shall be regarded as merchandise imported into the United States."  Texaco, 44 F.3d at 1547 (citations omitted).

higher duties on plaintiffs' entries, 19 U.S.C. § 1315(d) is still inapplicable because plaintiffs did not meet their burden of proving either (1) the Secretary of the Treasury made a formal "finding" of an EUP as required by the statute; or (2) if no finding was made by the Secretary, that a de facto EUP existed. See Def.'s Mem. Supp. Cross-mot. Summ. J. at 22-28.  Even if plaintiffs show that a de facto EUP existed, defendant claims that the plaintiffs had actual notice of the change in practice before the entries were made in this action because (1) plaintiffs were members of The American Institute for Merchant Shipping, who participated as amicus curiae in Texaco; (2) Customs had issued and published HQ memoranda 113308 and 113350; and (3) plaintiffs met with Customs on February 22, 1995.  See id. at 28-32.

### 1.    Texaco's One-Prong "But For" Test

The Court rejects plaintiffs argument that Texaco contained a second prong requiring Customs to affirmatively prove no EUP exists under 19 U.S.C. § 1315(d) before it can impose duties on vessel repair-related expenses found dutiable under the "but for" test.[7] Although plaintiffs note that in Texaco the CAFC stated "we hold that the imposition of the fifty percent ad valorem duty upon the

---

[7]  Plaintiffs do not challenge Customs' use of the "but for" test to determine whether a particular entry of repair is dutiable as an expense of repair under 19 U.S.C. § 1466(a).  See Pls.' Reply Opp'n to Def.'s Cross-mot. Summ. J. at 3.

expenses at issue in this case was consistent with the vessel repair statute and not contrary to any established and uniform practice of Customs," this Court finds that the CAFC's statement does not establish a two-prong test for determining the dutiability of a vessel repair expense under 19 U.S.C. § 1466(a). Texaco, 44 F.3d at 1543.

In Texaco, the CAFC agreed with this Court's "but for" interpretation of "expenses of repairs" under 19 U.S.C. § 1466(a) that duties can be assessed against vessel repair expenses incurred "but for" dutiable repair work. See id. at 1543-45. Only after reaching this finding, the CAFC considered and rejected the plaintiffs' claim in Texaco that Customs should not have assessed duties on the expenses at issue in the case because Customs' assessment changed an EUP without providing the requisite notice in the Federal Register under 19 U.S.C. § 1315(d). See id. at 1547-48. In responding to plaintiffs' argument, the CAFC affirmed that an EUP claim is available to a party in a case involving the imposition of a higher rate of duty to imported merchandise, including duties on vessel repair expenses. See id.

Nevertheless, the CAFC in Texaco did not change the fact that the burden rests upon the plaintiff to prove that an EUP exists under 19 U.S.C. § 1315(d), a burden the CAFC determined the

plaintiffs did not meet in the case.[8]  See, e.g., Siemens America, Inc. v. United States, 692 F.2d 1382, 1384 (Fed. Cir. 1982) (noting that, even if a "finding" of an EUP by the Secretary of the Treasury is not a prerequisite to application of 19 U.S.C. § 1315(d), the importers still shoulder "their burden of proving that there existed an established and uniform practice").  In other words, the CAFC did not create a second prong requiring Customs to affirmatively prove that an EUP does not exist before it can impose duties on expenses that meet the "but for" test; rather, the CAFC merely addressed the plaintiffs' failure to satisfy their burden of demonstrating an EUP under 19 U.S.C. § 1315(d).  The Court, therefore, finds that Texaco only established a one-prong "but for" test for determining whether a vessel repair expense under 19 U.S.C. § 1466(a) is dutiable.

### 2.  Lack of "Administrative Ruling" Under 19 U.S.C. § 1315(d)

The Court further finds that the thirty-day notice in the Federal Register under 19 U.S.C. § 1315(d) is inapplicable in this case because plaintiffs failed to demonstrate that the elements of the statute were violated.  To trigger this procedural requirement, there must have been (1) an administrative ruling that increases

---

[8]   Indeed, plaintiffs appear to acknowledge this burden, asserting in their reply brief that they "met their burden to establish the existence of EUP's."  Pls.' Reply Opp'n to Def.'s Cross-mot. Summ. J. at 6.

the rate of duty on the imported merchandise; and (2) the merchandise is subject to an EUP of a lower duty rate.  See 19 U.S.C. § 1315(d).

In this action, an "administrative ruling" did not result in the imposition of a higher rate of duty.  In other words, despite plaintiffs' contentions, the protest review decisions or protest denials did not provide a new interpretation of the vessel repair statute that resulted in the assessment of higher duties.  Rather, the CAFC's decision in Texaco mandated the change that led to higher duties.

As noted, the CAFC enunciated in Texaco that the "expenses of repairs" language in 19 U.S.C. § 1466(a) covers expenses which were incurred "but for" dutiable repairs.  See Texaco, 44 F.3d at 1543-45.  The CAFC's determination is a matter of law that must be followed by this Court and Customs.  See United States v. Ben Felsenthal & Co., 16 Ct. Cust. Appl. 15, 17-18 (1928) (holding that it is "well settled that where a court of competent jurisdiction settles and judicially defines the common meaning of a term used in a statute, such a determination and adjudication becomes [a] matter of law" and will be adhered to until a legislative change in statute necessitates a change in meaning).  Where a judicial decision mandates a change in an EUP, 19 U.S.C. § 1315(d) is inapplicable.  See Westergaard, Berg-Johnsen Co. v. United States,

17 Cust. Ct. 1, 3, C.D. 1009 (1946) (noting that 19 U.S.C. § 1315(d) is limited to an administrative ruling changing an EUP of a lower duty rate, but does not apply where the higher assessment is due to a judicial decision). Moreover, the legislative history of 19 U.S.C. § 1315(d) expressly removes judicial decisions from the notice requirement of 19 U.S.C. § 1315(d). See id. Accordingly, since Customs' actions following Texaco, including the issuance of HQ memoranda 113308 and 113350 implementing the "but for" test and subsequent protest denials, were based on the agency complying with a judicial mandate, the Court finds that 19 U.S.C. § 1315(d) does not apply in this case on this basis alone. The Court, therefore, declines to address plaintiffs' EUP arguments under 19 U.S.C. § 1315(d).

## B. Applicability of 19 U.S.C. § 1625(c)(1)

As part of their argument pertaining to their alleged second-prong of Texaco's "but for" test, plaintiffs also claim that Customs violated 19 U.S.C. § 1625(c) by issuing numerous protest review decisions that modified or revoked prior Customs interpretive rulings or decisions without giving interested parties notice and opportunity to comment beforehand as required under the

statute.[9]  See Pls.' Mem. Supp. Mot. Summ. J. at 15-18.  In particular, plaintiffs point out that these protest review decisions (1) modified or revoked Customs HQ rulings or decisions that had been in effect for years, in violation of 19 U.S.C. § 1625(c)(1); and (2) had the effect of modifying the nondutiable treatment Customs previously accorded to various vessel repair

_____

[9]  Title 19, United States Code, § 1625(c) provides in pertinent part:

**(c) Modification and revocation**

A proposed interpretive ruling or decision which would--

(1)  modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin.  The Secretary shall give  interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision.  After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period.  The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c) (1994).  Section 1625, as amended by § 623 of Title VI of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057, 2186 (Dec. 8, 1993), was not in effect at the time Customs considered the vessel repair entries in Texaco and, therefore, it was not part of the case's holding.

expense entries, in violation of 19 U.S.C. § 1625(c)(2).  See id. at 17.  Moreover, even if Customs' HQ memoranda 113308 and 113350 and the February 1995 meeting between Customs and plaintiffs can be construed as giving notice and opportunity to comment, plaintiffs assert that under American Bayridge Corp. v. United States, 22 CIT __, 35 F. Supp. 2d 922 (1998), the notice-and-comment requirements of 19 U.S.C. § 1625(c) are mandatory rather than discretionary and, thus, Customs violated the statute by failing to comply with such requirements.  See  Pls.' Reply Opp'n to Def.'s Cross-mot. Summ. J. at 12-14.

Defendant argues that the provisions of 19 U.S.C. § 1625(c) are inapplicable here.  See Def.'s Mem. Supp. Cross-mot. Summ. J. at 32-39.  In particular, defendant claims that the alleged interpretive rulings or protest review decisions, which were unnamed and unidentified by plaintiffs, did not "modify" prior Customs rulings, decisions or treatment of vessel repair expenses; rather, the CAFC's mandate in Texaco did so, which Customs is bound to follow.  See Def.'s Mem. Reply to Pls.' Opp'n to Def.'s Cross-mot. Summ. J. at 16.  Indeed, defendant notes that if the alleged protest review decisions were considered to have modified prior rulings or decisions, Customs could not follow Texaco without first publishing notice and giving interested parties the opportunity to comment on whether Texaco was correct--an irrelevant question since

Customs has no option but to observe Texaco's mandate. See id. at 16-17.

In addition, defendant asserts that plaintiffs did not meet the specific requirements of 19 U.S.C. § 1625(c)(1) in that plaintiffs failed to identify a single protest review decision that explicitly "revoke[d] a prior interpretive ruling or decision which has been in effect for at least 60 days." Id. at 17 (quoting 19 U.S.C. § 1625(c)(1)). Similarly, defendant claims that plaintiffs failed to identify any evidence demonstrating that the alleged protest review decisions under 19 U.S.C. § 1625(c)(2) had the effect of "modifying the treatment previously accorded by the Customs Service to substantially identical transactions" or that Customs ever issued such a "modifying" ruling. Id. at 18 (quoting 19 U.S.C. § 1625(c)(2)). Defendant also argues that the facts at issue here are distinguishable from American Bayridge and, therefore, plaintiffs erred in relying on the case. See id. at 19-20.

The Court rejects plaintiffs' contention that 19 U.S.C. § 1625(c) applies in this case. First, 19 U.S.C. § 1625(c) requires the Secretary of the Treasury to publish a proposed interpretive ruling or decision in the Customs Bulletin and to give interested parties an opportunity to comment if such a ruling or decision would: (1) modify or revoke a prior interpretative ruling or

decision that had been in effect for at least 60 days; or (2) have the effect of modifying Customs' previous treatment of substantially identical transactions. See 19 U.S.C. § 1625(c)(1), (2). In this case, however, Customs did not issue a proposed interpretive ruling or decision within the meaning of 19 U.S.C. § 1625(c). In other words, Customs did not, on its own motion, undertake review of the dutiability of foreign repairs and propose a new interpretation of customs law; rather, the CAFC's decision in Texaco established a new interpretation of law that Customs is bound to follow. The Court, therefore, concludes the protest review decisions alluded to by plaintiffs, as well as the HQ memoranda 113308 and 113350 published in the Customs Bulletin, were not proposed interpretive rulings or decisions; instead, such decisions and memoranda merely implemented the judicial mandate of Texaco.

Similarly, the Court finds that plaintiffs failed to show how the protest review decisions and the HQ memoranda modified or revoked prior interpretative rulings or decisions or modified the treatment previously accorded to substantially identical transactions. No prior interpretative rulings or decisions, for instance, were expressly discussed in either HQ memoranda.

The Court also finds that plaintiffs' insistence on a notice-and-comment period under 19 U.S.C. § 1625(c) in the instant case

would serve no purpose. Section 1625(c)'s stated goal is to allow interested parties to comment on "the correctness of the proposed ruling or decision." 19 U.S.C. § 1625(c). Here, Customs did not issue a proposed ruling or decision. Further, Customs did not have any discretion with regard to the CAFC's decision in Texaco because Customs could not modify or reject the judicial decision. The Court, therefore, finds that requiring comments on the "correctness" of a judicial decision would be inappropriate.

As further support that 19 U.S.C. § 1625(c) excludes judicial decisions, the Court finds guidance in subsection (d) of the statute. Section 1625(d) addresses the circumstance in which Customs needs to provide a comment period with regard to a court decision. Specifically, subsection (d) provides that "[a] decision that proposes to limit the application of a court decision shall be published in the Customs Bulletin together with notice of opportunity for public comment thereon prior to a final decision." 19 U.S.C. § 1625(d). Subsection (d), therefore, makes clear that Customs is only required to hold a comment period with regard to a judicial opinion if Customs seeks to limit its applicability. Where, as here, Customs plans to fully implement a judicial mandate, no solicitation of public comment is necessary.

The Court also disagrees with plaintiffs' assertion that Customs violated 19 U.S.C. § 1625(c) under the holding of American

Bayridge.  While American Bayridge stands for the proposition that Customs must honor the procedural requirements of 19 U.S.C. § 1625(c), the Court finds this case does not expand the scope of the statute to encompass the case at bar.  In American Bayridge, Customs decided, on its own motion, to reinterpret the coverage of certain tariff classifications, see 35 F. Supp. 2d at 923-24; in this action, however, Customs merely applied a judicial decision to the vessel repair entries before it.  Further, in American Bayridge, Customs expressly revoked an identified ruling, see id. at 924; whereas here, Customs' HQ memoranda and the protest review decisions took no such action.  The fact that American Bayridge held that 19 U.S.C. § 1625(c) is mandatory does not make it applicable to cases that fall outside of its purview such as this action.  Accordingly, the Court concludes that plaintiffs' reliance on American Bayridge is inappropriate.

## V.   Customs' Alleged Pro-Rata Duty Assessment of Certain Vessel Repair Expenses

Plaintiffs initially noted in their brief that an expense under Texaco's "but for" test is either an expense of repair or it is not, that is, the repair cannot be both dutiable and nondutiable.  See Pls.' Mem. Supp. Mot. Summ. J. at 20. Thus, plaintiffs argued in their brief that Customs erred under Texaco and 19 U.S.C. § 1466(a) in assessing duties on a pro-rata basis to

certain vessel repair entries in this case if Customs found any dutiable reason for the expense of the repair work. See id. at 18-21. Nevertheless, in their reply brief, plaintiffs assert that while they have identified an entry that was prorated, they acknowledge this entry does not concern a pro-rata duty that conflicts with Texaco. See Pls.' Reply Opp'n to Def.'s Cross-mot. Summ. J. at 2-3, 14. Plaintiffs, therefore, contend that their proration issue should be dismissed or severed from this action to allow them to litigate the issue in related actions which more accurately raise the issue. See id.

Defendant asserts that plaintiffs' proration issue should not be dismissed or severed because the issue was never raised in this action. See Def.'s Mem. Reply to Pls.' Opp'n to Def.'s Cross-mot. Summ. J. at 4 n.4. Moreover, defendant claims that since the issue of proration based on a misapplication of Texaco's "but for" test was never raised by plaintiffs in any of their entries or the complaints in this action, the Court does not have jurisdiction over the issue and, therefore, summary judgment on this matter is improper and must be denied. See id.

Contrary to defendant's assertion of lack of jurisdiction, the Court finds that, in general, plaintiffs raised the proration issue in this action because APL's complaint and the parties' stipulation

of facts alluded to the issue.[10]  Nevertheless, the Court agrees with both parties that the issue of proration based on a misapplication of <u>Texaco's</u> "but for" test was not specifically discussed in this action.  Accordingly, the Court declines to address the issue and, therefore, summary judgment on the issue is denied.


## CONCLUSION

For the foregoing reasons, the Court grants defendant's cross-motion for summary judgment and denies plaintiffs' motion. The action is dismissed.  Judgment will be entered accordingly.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated:      September 23, 1999
            New York, New York

---

[10]  <u>See</u> APL Compl. at ¶ 8 (stating that "Customs has improperly applied and impermissibly expanded the Court's ruling in <u>Texaco</u> . . . in that . . . they have apportioned duty when the 'but for' test in Texaco has been met"); Stip. Facts at ¶ 5 ("Some of the protests which are the subject of the complaints consolidated in this action relate to duty assessed to certain items on a pro rata basis apportioned by Customs to reflect what Customs alleges are the dutiable and non-dutiable foreign costs in this entry.").