**SEA–LAND SERVICE, INC., (now known as SL Service Inc.), Plaintiff–Appellant,**

and

**American President Lines, Ltd., (now known as American Ship Management, LLC), Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–1047.

United States Court of Appeals, Federal Circuit.

Feb. 16, 2001.

Evelyn M. Suarez, Sonnenschein, Nath & Rosenthal, of Washington, DC, argued

for plaintiff-appellant. With her on the brief was Myles J. Ambrose, Arter & Hadden LLP, of Washington, DC. Also on the brief for American Ship Management, LLC, was Charles Routh, Garvey, Schubert & Barer, of Seattle, WA. Of counsel was Marc Richard Baluda, Arter & Hadden, LLP, of Washington, DC.

Barbara S. Williams, Attorney, Commercial Litigation Branch, Civil Division, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief were David M. Cohen, Director, Commercial Litigation Branch, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, of New York, NY. Of counsel on the brief is Karen P. Binder, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, NY.

Lauren R. Howard, Collier, Shannon, Rill & Scott, PLLC, of Washington, DC, argued for amicus curiae Shipbuilders Council of America, Inc.

Before SCHALL, BRYSON, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Under 19 U.S.C. § 1466(a),[1] a duty is imposed on the expenses of repairs on United States vessels in foreign shipyards. In *Texaco Marine Services, Inc. v. United States,* 44 F.3d 1539, 1543–44 (Fed.Cir. 1994), we held that dutiable expenses under § 1466(a) include all expenses that would not have been incurred "but for" the vessel's repairs. In this case, Sea–Land Service, Inc. and American President Lines, LTD, now known as American Ship Management, LLC (referred to collectively as "Sea–Land"), incurred repair expenses

---

1. All statutory references are to the 1994 version of the United States Code, as modified by Supplement IV of 1998.

on United States vessels in foreign shipyards with respect to which the United States Customs Service ("Customs") assessed duties pursuant to § 1466(a), following the "but for" test articulated in *Texaco*. Sea–Land protested the assessments. Following Customs' denial of the protests, Sea–Land appealed to the United States Court of International Trade. In its appeal, Sea–Land argued that the assessments were unlawful because, in denying its protests, Customs had violated 19 U.S.C. § 1625(c) by failing to publish the denials in the Customs Bulletin and Decisions ("Customs Bulletin") and by failing to provide for notice and comment with respect to the rulings on the assessments. Sea–Land argued that such actions were required because the denials of its protests amounted to interpretative rulings or decisions by Customs that modified, revoked, or had the effect of modifying or revoking earlier rulings or decisions that predated *Texaco*, thus bringing into play the notice and comment requirements of § 1625(c). In due course, Sea–Land and the United States moved for summary judgment. The court denied Sea–Land's motion, but granted that of the United States, concluding that Customs' actions in the case did not trigger the notice and comment requirements of § 1625(c). *Sea–Land Service, Inc. v. United States*, 69 F.Supp.2d 1371 (CIT 1999). We affirm.

## BACKGROUND

### I.

Section 1466(a) provides, in relevant part:

> The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country.... For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

Under the statute, a fifty percent duty is imposed "on the value of 'expenses of repairs' made in a foreign country upon United States-flagged vessels." *Texaco*, 44 F.3d at 1540. Section 1466(a) provides that if the expenses incurred in a foreign port are not the "expenses of repairs" described in the statute, then the expenses are not subject to the fifty percent duty. *Id.* at 1540–41.

In *Texaco*, we were asked to review a Court of International Trade decision affirming Customs' determination that certain cleaning and equipment protective covering expenses incurred by a United States vessel in a foreign port were "expenses of repairs" under § 1466(a) and thus dutiable. *Id.* at 1540. The specific expenses at issue were expenses associated with clean-up following boiler room, cargo tank, and "after peak" tank repairs and expenses associated with protective coverings used during cargo tank repairs. *Id.* at 1541–52. In reviewing the Court of International Trade's decision, we first interpreted "expenses of repairs" under § 1466(a) to mean those repair expenses that would not have been incurred "but for" the repair work. *Id.* at 1544–45. In coming to this conclusion, we rejected earlier, more restrictive definitions of "expenses of repairs" by the Court of International Trade and the United States

Customs Court. *Id.* at 1546–47. We then applied the "but for" approach under § 1466(a) to the expenses at issue and found that both the clean-up expenses, *id.* at 1548–50, and the expenses associated with the protective coverings, *id.* at 1550, were expenses that would not have been incurred "but for" the vessel repairs. Therefore, we agreed with the Court of International Trade that Customs properly determined that those vessel repair expenses were dutiable under § 1466(a).

## II.

We issued our *Texaco* decision on December 29, 1994. Shortly thereafter, on January 18, 1995, the Assistant Commissioner for Customs Office of Regulations and Rulings ("Assistant Commissioner") issued Headquarters ("HQ") memorandum 113308 to Customs' New Orleans Regional Director. The HQ memorandum was later published in the Customs Bulletin. HQ memorandum 113308 stated that the "but for" test for dutiable expenses of repair under § 1466(a) described in *Texaco* had "wide-ranging ramifications with respect to Customs' liquidation of vessel repair entries." In the memorandum, it was noted that certain expenses that Customs currently did not consider "expenses of repairs" under 19 U.S.C. § 1466(a), such as travel or transportation, would, under certain circumstances, "undoubtedly constitute dutiable 'expenses of repairs' under the 'but for' test" set forth in *Texaco*. The HQ memorandum stated that all costs not finally liquidated as of the date of *Texaco* "should be liquidated as dutiable as 'expenses of repairs' *provided* they pass the 'but for' test discussed above."

Sea–Land declared and entered vessel repair expenses with Customs from January 1995 through March 1996. The expenses involved work performed on several United States-flagged vessels by foreign

labor. The expenses listed in the entries included expenses associated with transportation, travel, equipment rental, meals, administrative insurance, and tax costs.

Representatives of Sea–Land met with Customs officials on February 22, 1995, to discuss the ramifications of the *Texaco* decision, HQ memorandum 113308, and their belief that Customs needed to comply with the notice and comment requirements of 19 U.S.C. § 1625(c) with respect to any rulings concerning the 1995–1996 repair expenses. On March 3, 1995, the Assistant Commissioner issued HQ memorandum 113350, which was subsequently published, modifying HQ memorandum 113308.[2] The new HQ memorandum provided that, instead of applying the "but for" test described in *Texaco* to all vessel repair expenses unliquidated at the time of the *Texaco* decision, Customs would only apply the test prospectively to entries filed after the date of the decision. The only exception to this rule was that the "but for" test would apply to unliquidated vessel repair expenses of the kind that were specifically at issue in *Texaco*, cleaning and protective covering expenses.

Customs then proceeded to examine each of Sea–Land's vessel repair expense entries, finding that some, but not all, of the entered expenses satisfied the "but for" test and were thus dutiable under § 1466(a). Sea–Land paid the liquidated duties on the applicable vessel repair entries and then filed administrative protests with Customs concerning the liquidations. After Customs' denial of the protests and further requests for review, Sea–Land appealed to the Court of International Trade seeking to recover the duties assessed by Customs under § 1466(a).

## III.

Before the Court of International Trade, the parties stipulated to the pertinent

**2.** Customs also published the full text of the *Texaco* decision.

facts. First, they agreed that, prior to *Texaco,* Customs had issued certain HQ rulings regarding the assessment of duties under § 1466(a) that had not been revoked, rescinded, or amended. *Sea–Land,* 69 F.Supp.2d at 1375. The parties also agreed that these earlier HQ rulings involved duties on one or more of the expenses that were the subject of Sea–Land's protests. *Id.* In addition, the parties agreed that none of the duties under protest involved cleaning or protective covering expenses similar to those disputed in *Texaco. Id.* Finally, Sea–Land and the government stipulated that "some of the protests relate to duty assessed to certain items on a pro rata basis apportioned by Customs to reflect what Customs alleges are dutiable and nondutiable foreign costs of an entry." *Id.*

With the above stipulation forming a backdrop, the parties cross-moved for summary judgment. In that setting, Sea–Land made three basic arguments. First, it argued that Customs had not actually applied the "but for" analysis to each of the expenses at issue. *Id.* at 1376. The Court of International Trade rejected this argument, concluding that Customs had conducted "a case-by-case 'but for' analysis for each expense at issue." *Id.* The court cited HQ memorandum 113308's instruction to evaluate each vessel repair entry under the "but for" standard as support for its conclusion. *Id.*

Sea–Land also argued that *Texaco* required that Customs determine whether assessing duties on a particular vessel repair expense runs counter to an established and uniform practice ("EUP")[3] of non-dutiability with respect to that expense. *Id.* at 1377. Sea–Land asserted that Customs' decision on its expenses changed various EUP's and that, consequently, Customs was required to comply with the notice requirement of 19 U.S.C. § 1315(d)[4] before any duties could be assessed. *Id.* at 1377–78. Addressing this contention, the Court of International Trade reasoned that the notice requirement of 19 U.S.C. § 1315(d) did not apply because it was this court's holding in *Texaco,* not an "administrative ruling" as required by § 1315(d), that impacted the assessment of duties on Sea–Land's vessel repair expenses. *Id.* at 1379–80. The court therefore rejected Sea–Land's second argument.

Finally, Sea–Land argued that Customs had violated 19 U.S.C. § 1625(c) by issuing protest review decisions that modified or revoked prior Customs "interpretative rulings or decisions" without providing the required notice and comment period described in § 1625(c). *Id.* at 1380. The Court of International Trade concluded, however, that this court's decision in *Texaco,* not a Customs ruling, had established the statutory interpretation that modified or revoked previous Customs decisions, and that the notice and comment requirements of § 1625(c) thus did not apply. *Id.* at 1381. The court also concluded that a notice and comment period under

---

3. The term "EUP" is used to describe a classification and liquidation of a particular good by Customs that is both established and uniform. In previous cases, this court has looked for "evidence of uniform classification and liquidation of merchandise at various ports over an extended period of time" to establish an EUP. *Heraeus–Amersil, Inc. v. United States,* 795 F.2d 1575, 1581 (Fed.Cir. 1986).

4. Section 1315(d) prohibits an "administrative ruling that results in the imposition of a higher rate of duty or charge than ... [has]

been applicable to imported merchandise under an established and uniform practice" from being effective until 30 days after publication of the ruling in the Federal Register. 19 U.S.C. § 1315(d); *see also Hemscheidt Corp. v. United States,* 72 F.3d 868, 870 (Fed. Cir.1995) (noting that § 1315(d) "on its face bars the levy and collection of increases in duties when an established and uniform practice exists taxing the particular imported goods at a lower rate, unless the higher rate has been fixed by an administrative ruling, notice of which has been given").

§ 1625(c) would serve no purpose because Customs was bound by this court's decision in *Texaco*. *Id.* at 1381–82. Consequently, it had no discretion or ability to modify the decision; it therefore would be unable to respond to any comments it received. *Id.* Having rejected all of Sea–Land's arguments, the court granted summary judgment in favor of the government.

Sea–Land appeals the Court of International Trade's decision. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### I.

Summary judgment is proper by the United States Court of International Trade when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ct. Int'l Trade R. 56(d). We review a grant of summary judgment by the Court of International Trade "for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist."[5] *Guess?, Inc. v. United States*, 944 F.2d 855, 857 (Fed.Cir.1991). On appeal, Sea–Land does not challenge Customs application of the but for test under 1466(a) to its vessel repair expense entries or the Court of International Trades ruling on 19 U.S.C. 1315(d). Rather, it contends that Customs was required to comply with the notice and comment requirements of 19 U.S.C. 1625(c) when it determined that the vessel repair expenses at issue were dutiable under 19 U.S.C. 1466(a).

As it did in the Court of International Trade, Sea–Land argues that Customs determination that certain vessel repair expenses were dutiable expenses under 1466(a) and its denial of Sea–Lands protests were interpretative ruling[s] or decision[s] under 1625(c). Sea–Land contends that these interpretative rulings or decisions by Customs modified, revoked, or had the effect of modifying earlier rulings or decisions by Customs that the vessel repair expenses at issue were not dutiable under 1466(a). Sea–Land argues that since Customs assessment of duties against it involved interpretative rulings or decisions that modified or revoked earlier Customs rulings or decisions, Customs was required by 1625(c) to provide notice and comment before liquidating Sea–Lands vessel repair expense entries. Sea–Land argues that *Texaco* did not revoke Customs prior rulings or decisions regarding the dutiability of specific vessel repair expenses at issue because it did not address whether the expenses at issue in this case were dutiable. Sea–Land acknowledges that *Texaco* established the but for test for determining which expenses are dutiable under 1466(a), but asserts that the *Texaco* court only decided, under the but for test, that cleaning and protective covering expenses were dutiable.

The government responds that 1625(c) does not apply to Customs actions in this case because Customs did not issue any interpretative ruling[s] or decision[s]. The government also argues that this court in *Texaco*, not Customs, modified or revoked any existing rulings or decisions involving the particular expenses at issue because this court in *Texaco*, not Customs, established the but for test under 1466(a). The government also argues that any change in Customs treatment of particular vessel repair expenses was a change mandated by *Texaco* that Customs properly followed in this case by applying the but for test to Sea–Lands vessel repair expense entries.

---

5. As noted above, Sea–Land and the government stipulated to the pertinent facts for purposes of their summary judgment motions.

For the reasons that follow, we reject Sea–Land's arguments and conclude that Customs' actions in this case did not trigger the notice and comment requirements of 19 U.S.C. § 1625(c).

## II.

Entitled "Modification and revocation," 19 U.S.C. § 1625(c) states that:

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30–day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

Section 1625(c) mandates that Customs provide notice and comment under specific circumstances. First, 1625(c) only applies to a proposed interpretive ruling or decision by Customs. *Id.* Second, the proposed interpretive ruling or decision must either modify or revoke a prior ruling or decision or have the effect of modifying Customs previous treatment of substantially identical transactions. *Id.* Section 1625(c) requires that, before Customs issues such an interpretative ruling or decision, it publish it and allow inter-

ested parties an opportunity to comment on its correctness. *Id.* The statute instructs Customs to consider the comments it receives. *Id.* Section 1625(c) then provides that the final ruling or decision will become effective 60 days after its publication. *Id.*

## III.

■ For purposes of this appeal, we will assume, without deciding, that the first requirement of § 1625(c) is met—that Customs' actions with respect to Sea–Land's vessel repair expense entries are "interpretative ruling[s] or decision[s]" under § 1625(c). Sea–Land's argument fails, however, because the second requirement of § 1625(c) is not met. The reason is that Customs' "interpretative ruling[s] or decision[s]" in this case did not modify, revoke, or have the effect of modifying earlier Customs interpretative rulings, decisions, or treatment of substantially identical vessel repair expenses under § 1466(a). Before Customs' actions in this case, this court's decision in *Texaco* in late 1994 had the effect of modifying all of Customs previous rulings, decisions, and treatment of vessel repair expenses under § 1466(a). Since Customs' actions do not meet the second condition under § 1625(c), the notice and comment requirements described in § 1625(c) were not triggered.

It was this court in *Texaco* that modified the treatment of vessel repair expenses under § 1466(a). We "clarif[ied]" the judicial interpretation of 19 U.S.C. § 1466(a) in *Texaco*, explaining that, based on the plain language of the statute, "expenses of repairs" in § 1466(a) meant those expenses that would not have been incurred "but for" the ship's repair. *Texaco*, 44 F.3d at 1546. With this explicit interpretation of § 1466(a), *Texaco* wiped the slate of decisions under § 1466(a) clean, requiring the dutiability of *all* vessel repair expenses to be determined by the "but for" test. Customs is required to follow and apply the

"but for" test. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (noting that [t]he judiciary is the final authority on issues of statutory construction and that when a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect). Any decision by Customs after *Texaco* is a decision under the new, clarified standards for determining what expenses under § 1466(a) are dutiable. Since this court, through its decision in *Texaco,* changed Customs' earlier treatment of vessel repair expenses under § 1466(a), Customs' actions after *Texaco* cannot be recognized as rulings or decisions that revoke or modify Customs' earlier decisions under § 1466(a). Furthermore, Customs, required to act under this court's interpretation of § 1466(a), cannot be said to be the one changing any of its previous decisions; our decision in *Texaco* created those changes.

Sea–Land is correct that *Texaco* did not apply the "but for" test to the particular expenses at issue in this case. As noted above, *Texaco* only dealt with the application of the "but for" test to two types of vessel repair expenses—cleaning and protective covering costs. *Texaco,* 44 F.3d 1548–50. However, when Customs deviates from its prior practice when evaluating a vessel repair expense after *Texaco* to determine whether that expense meets the "but for" test, Customs is following the new rules established by this court. Again, any change in Customs' treatment of a particular expense is the doing of our decision in *Texaco,* not a decision by Customs. In effect, in making the decisions it made regarding Sea–Land's expenses after *Texaco,* Customs was deciding vessel repair expense issues for the first time under the "new" interpretation of § 1466(a) set forth in *Texaco.* Thus, Customs' decisions

cannot be considered to be modifications of Customs' earlier treatment of those expenses, because, in essence, there was no previous treatment under the "new" interpretation of § 1466(a).

■ Our holding that our decision in *Texaco,* and not Customs' decisions regarding each of Sea–Land's expenses, modified Customs' earlier treatment of all vessel repair expenses under § 1466(a) is supported by the policy and purpose behind § 1625(c). The legislative history of § 1625(c) indicates that the statute's purpose is to provide "assurances of transparency concerning Customs rulings and policy directives through publication" of Customs' rulings or decisions that modify or revoke an existing ruling or decision. H.R. Rep. No. 103–361, at 124 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2551, 2674. Section 1625(c)'s notice and comment requirements are intended to ensure that the interested public has notice of a proposed change in Customs' policy and to allow the public to make comments on the appropriateness of the change and to modify any current practices that were based in reliance on Customs' earlier policy. Section 1625(c) also provides for Customs to make an informed decision when changing its policies through the comments it receives.

Since it was our decision in *Texaco,* not Customs' later actions in this case, that changed Customs' policy towards dutiability of vessel repair expenses under § 1466(a), the policy reasons for notice and comment embedded in § 1625(c) do not apply. The interested public was given notice of the modification in the way vessel repair expenses would be determined to be dutiable under § 1466(a) by way of the publication of this court's decision in *Texaco.* Furthermore, although Customs' individual evaluation on certain expenses may represent the first time that specific expenses are handled differently, the new

approach was not brought on by the will of Customs, but by the decision in *Texaco*, a decision of which the public was notified. Additionally, comments from the interested public on Customs' actions under these circumstances are not helpful because Customs is merely implementing this court's interpretation of § 1466(a), an interpretation that, as noted above, Customs is required to follow. Notably, 19 U.S.C. § 1625(d) calls for notice and comment when Customs "proposes to limit the application of a court decision," something which Customs is not doing in this case with regards to *Texaco*, as can be seen in HQ memorandum 113308. Put simply, since Customs' change in the way it approached vessel repair expenses under § 1466(a) was mandated by our decision in *Texaco*, not a self-proposed change by Customs, requiring notice and comment in this case would not serve the purpose and policy behind § 1625(c).

## CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade is *AFFIRMED*.

Each party shall bear its own costs.